**BONAPARTE, Co. Treas., et al. v. AMERI-CAN VINEGAR MFG. CO.**

No. 21117. Opinion Filed Nov. 15, 1932.

Rehearing Denied Dec. 20, 1932.

Geo. M. Callihan, Co. Atty., and I. L. Harris, Asst. Co. Atty., for plaintiff in error.

Everest, Dudley & Brewer, Gordon Stater. and Adelbert Brown, for defendant in error.

SWINDALL, J. On June 22, 1929, the American Vinegar Manufacturing Company, as plaintiff, commenced an action in the district court of Oklahoma county, Okla., against E. B. Bonaparte, county treasurer of Oklahoma county, as defendant, to recover the sum of $95.66, being the first half of the 1928 personal tax assessed and levied against the personal property of the plaintiff in Oklahoma county for the year 1928, which was paid by the plaintiff under protest, and which plaintiff seeks to recover from the county treasurer upon the ground that the total levy of 46.68 mills, based upon the purported assessed valuation of the personal property of the plaintiff, is illegal and void for the reason that the county assessor of Oklahoma county failed to publish notice as required by the terms and provisions of section 9664, C. O. S. 1921 [O. S. 1931, sec. 12611] enacted by the Legislature in 1919, Session Laws 1919, chapter 160, entitled, "An Act to provide for the publication of assessments before the meeting of the board of equalization, providing for payment of such publication." It is as follows:

"Section 1. As soon as the county assessor shall have completed the assessment he shall cause to be published a full and complete list of such assessment by township or assessment district of all personal property, which publication shall be made on or before the last Monday of May, in some public newspaper or newspapers printed and published in said county; provided, that in the township or assessment district in which there are one or more newspapers of general circulation, the list of such township or assessment district shall be published in one of the said newspapers printed and published in said township or assessment district, in substantially the following form:

"Personal

"John Doe          ($    )

"Provided that the publication be let to the lowest and best bidder, not to exceed ten (10) cents per name for each person or corporation so used, which will include the mailing of a copy of the paper containing such assessment list to each taxpayer in said township or assessment district. The expense of such printing and publication shall be paid out of the county treasury, as other claims against the county."

There is no objection made that the plaintiff did not have personal property of the value fixed by the assessor in Oklahoma county subject to taxation for the year 1928. It is not contended that the property was not assessed by the assessor as provided by law, or that any of the levies for the several subdivisions of the state exceeded the statutory or constitutional limits, or that the levies were not properly and correctly equalized by the county equalization board and certified to the county excise board and the levy made by the excise board and by it certified to the county assessor and by him entered upon the tax rolls and certified and delivered to the county treasurer. The only objection made is that notice was not given as required by section 1, ch. 160, Session Laws 1919, now section 9664, C. O. S. 1921 [O. S. 1931, sec. 12611]. A demurrer was filed by the defendant to the petition of the plaintiff upon the ground the petition of plaintiff fails to state facts sufficient in law to constitute a cause of action in favor of plaintiff and against the defendant as county treasurer of Oklahoma county, Okla. The demurrer was considered and overruled by the trial court, and the defendant duly excepted. The county attorney of Oklahoma county, as attorney for the defendant, elected to stand upon the demurrer, and judgment was rendered in favor of the plaintiff and against the defendant as county treasurer of Oklahoma county for the sum prayed. Notice of appeal was given in open court, appeal taken, and the cause is here now to review the judgment of the district court of Oklahoma county. The parties will be referred to in this opinion as they appeared in the trial court.

The demurrer of the defendant admits that the notice was not published, but it is the contention of the defendant that the statute provides different methods by which property may be assessed; for the correction of erroneous assessments; that assessments may be increased by the assessor or the county board of equalization, of which increase notice must be given to the interested party; that the assessor and county board of equalization may add omitted property upon giving notice to the owner; and finally, for an owner of property who has been deprived of any of his rights, under the law, paying his taxes under protest and bringing an action within 30 days to recover back any illegal tax paid by him; and for these reasons that the tax is not void, and before the owner can be heard to complain and avoid payment of the tax he must allege and show that some injustice has been done him and that he has suffered some injury by reason of the tax assessment or tax levy. The plaintiff contends that the giving of notice is mandatory and jurisdictional and that the failure to give such notice deprives the county of the right to collect any portion of the tax assessed and levied upon the personal prop-

erty of the plaintiff, and that ·the collection of such tax without giving ·such notice deprives the plaintiff · of due process of law under the Constitutions ·of the United States and the state of Oklahoma. These are the issues presented by the pleadings and briefs of the respective parties.

We held in State v. State ex rel. Schull, Bank Commissioner, 142 Okla. 293, 286 P. 891, that:

"Where different legislative enactments have reference to the same subject and are consistent with each other, they should be construed together and harmonized, if possible, so that effect will be given to each so far as is consistent with the evident intent of the latest enactment."

In the case of Weatherly, County Treas., v. Sawyer, 63 Okla. 155, 163 P. 717, this court held that:

"Under chapter 152, Sess. Laws 1911, p. 331, proceedings to assess property for taxation may be initiated in three ways: (1) The owner may give to the assessor a list of his taxable property; (2) in case any property is for any cause omitted, the assessor may make out and return a list of such omitted property; and (3) the board of equalization at its regular meeting may add any omitted property to the assessment roll by giving five days' notice thereof in writing to the owner or his agent to appear at a time and place fixed in such notice and show cause why such omitted property should not be added."

In Streight v. William Durham, Treas., 10 Okla. 361, 61 P. 1096, the Territorial Supreme Court held that:

"The Organic Act and the statutes of this territory require that all property subject to taxation shall be assessed and taxed according to its true cash value, and where a party seeks to enjoin the collection of a tax which he claims is illegal and excessive, arising from the action of the board of equalization in raising the valuation of the property above the returned valuation by the assessor to the board, it devolves upon him not only to allege in his petition, but to prove, that the property was listed and returned for assessment at its true cash value, before a court of equity will interfere and enjoin the collection of the excessive tax."

In Wallace v. Bullen, 6 Okla. 17, 52 P. 954; 6 Okla. 757, 54 P. 974, the Supreme Court of the territory, in passing upon a tax case, uses this language:

"These several officers and boards may be said to comprise the machinery of the law for exercising the taxing powers of government. Each must act within the special scope of his or its authority, and when so acting, the only limitation that we can discover to the combined authority and jurisdiction of all is, ·that their imposition of taxation must be equal and uniform; in assessing ` they must not fix values higher than the true cash values of the property assessed; and in levying they must not levy a higher rate than that limited by the law. In other words, the general scope of the jurisdiction and powers of the taxing authorities is to impose taxation upon property assessed at it true cash value, and at a rate not exceeding the maximum fixed by law; and when the authorities have proceeded and acted within the scope of their authority as thus defined, and property has not been valued for taxation beyond its true cash value, or a greater rate of taxation levied upon such value than that authorized by law, the owner has not been injured and cannot be heard to complain, provided his property has been taxed equally and uniformly with other property in the taxing district."

In the case of Taylor v. Secor, known as the Illinois State Railroad Tax Cases, 92 U. S. 575, Mr. Justice Miller, in delivering the opinion of the court, upon this subject said:

"It is charged that the board of equalization increased the estimates of value so reported to the auditor, without notice to the companies, and without sufficient evidence that it ought to be done; and it is strenuously urged upon us that, for want of this notice, the whole assessment of the property and levy of taxes is void.

"It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the board without notice is void as to the railroad companies, it must be equally void as to every other owner of property in the state, when the value assessed upon it by the local assessor has been increased by the board of equalization. How much tax would thus be rendered void it is impossible to say. The main function of this board is to equalize these assessments over the whole state. If they find that a county has had its property assessed too high in reference to the general standard, they may reduce its valuation; if it has been fixed too low, they raise it to that standard. When they raise it in any county they necessarily raise it on the property of every individual who owns any in that county. Must each one of these have notice and a separate hearing? It a railroad company is by law entitled to such notice, surely every individual is equally entitled to it. Yet, if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of this board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, its absurdity is apparent. Nor is there any

nardship in the matter. This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right or redress a wrong; and, in the business of assessing taxes, this is all that can be reasonably asked."

In Weyerhaueser v. State, 176 U. S. 530, the Supreme Court of the United States decided that:

"The provision in the statute of Minnesota for 1893, c. 151, authorizing the Governor of the state when it is made to appear that there has been a gross undervaluation of taxable property by the assessor for any county in the state, to appoint a board to revalue and reassess it, which board shall, after due examination, prepare a list of all such undervalued property, of the year or years in which it was so under assessed, the amount of the assessment and the actual and true value thereof for which it should have been so assessed, does no violation to the Fourteenth Amendment to the Constitution of the United States, and does not deprive the owner of lands, so reassessed at an advanced value, of his lands without due process of law."

It was contended in that case that no notice of any of the proceedings, by any of said persons, in making the reassessment or revaluation of said lands, or in extending the taxes against said lands, was ever given, by publication or otherwise, and that the increase of assessment was in violation of article fourteen of the amendments to the Constitution of the United States, providing that no state shall deprive any person of his property without due process of law. Mr. Justice McKenna, speaking for the court, among other things, said:

"The special objections of plaintiffs in error therefore cannot be sustained, nor the broader one that the first assessments are final against any power of review or addition by the Legislature. We held in the Winona Case, supra, that the Legislature had power to provide for the assessment of property which had escaped taxation in prior years, and, as we have seen, a special manner of assessment was sustained. We agree with the Supreme Court of the state that a gross undervaluation of property is within the principle applicable to an entire omission of property. If it were otherwise, the power and duty of the Legislature to impose taxes and to equalize their burdens would be defeated by the fraud of public officers, perhaps induced by the very property owners who afterwards claim its illegal advantage."

The decisions of the Supreme Court of the United States above quoted in part are cited with approval in Streight et al. v. Durham, Treasurer, supra.

In the light of the Organic Act and the decisions of the Supreme Court of the territory, the Constitutional Convention in 1907 proposed and the people adopted the state Constitution, containing section 5, article 10, which provides:

"The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects."

And section 8, article 10, providing that:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer or other person authorized to assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

Under the Enabling Act the laws in force in the territory of Oklahoma not repugnant to the Constitution are extended in force in the state of Oklahoma until amended, repealed, or changed by the state Legislature. The provisions of the law relative to enjoining the collection of taxes was amended in 1915, and the procedure in force at the time this action was commenced was substituted for actions by injunction, yet, a proceeding under section 9971, C. O. S. 1921, to recover taxes paid under protest is in its nature equitable. At the time the Legislature enacted section 1, chapter 160, page 231, Session Laws 1919, brought forward as section 9664, C. O. S. 1921 [O. S. 1931. sec. 12611] supra, there was in force in the state section 9666, C. O. S. 1921, passed by the Legislature in 1915, appearing in the Session Laws of 1915, section 1, chapter 193, page 321, Warden Ptg. Co. Edition; State Ptg. & Pub. Co., p. 392. This section provides a procedure for assessing property and makes it the duty of the county assessor, subject to the proviso in said section, on the 15th day of January of each year to proceed to take a list of all taxable property in the county, and assess the value thereof as of January 1st in the following manner: By posting notices in three or more conspicuous places in each city or voting precinct at least ten days prior to the date the assessor will meet the taxpayers to list their property; and providing that the assessor shall remain at each city or voting precinct one day for each 60 voters, or major fraction thereof, in said city or voting precinct. If any taxpayer has failed to meet the assessor and list his property on the date advertised in his voting precinct, he may meet him in another

township or voting precinct and list same. If any taxpayer because of sickness or any other unavoidable circumstance shall not be able to meet the assessor on the date advertised, he may render a written list of his personal property, including a legal description of his real estate, if any, and subscribe and swear to the oath required by each taxpayer as to its correctness. After the county assessor shall have visited each city, or voting precinct in compliance with the foregoing provisions of the law, he is required to give notice by publication in some newspaper of general circulation in the county, and if there is no newspaper published in said county, then by posting notices in, each voting precinct, that he will be in his office at the county seat the next 20 days for the purpose of assessing those who have not assessed their property for the current year. At the expiration of the 20 days those who have failed to assess their property for the current year shall be declared delinquent and the penalty of $1 for failure shall be added to his or her tax, and entered on the tax books and collected by the county treasurer, and when collected shall be paid to the county assessor or his deputy who assessed said delinquent property, provided that no assessor shall be authorized to proceed by giving notice as provided in said section until the board of county commissioners shall have authorized such procedure by resolution duly passed, in regular or special session, and published at least once in some newspaper of general circulation in the county. Until the board of county commissioners of any county shall have authorized such procedure by resolution duly passed in regular or special session and published as provided for in said section, the assessor is required to call upon and demand from each person and firm and the president, cashier, treasurer or managing agent of each corporation, association or company, a statement under oath or affirmation of all real estate and personal property owned, claimed or in the use, possession or control of such person, firm, corporation, association or company, and otherwise proceed as provided in section 9616, C. O. S. 1921 [O. S. 1931, sec. 12595] and other sections relating to assessing property. Section 9666 was evidently intended to permit the property owner to visit the county assessor at a designated place in a voting precinct instead of requiring the county assessor to visit the property owner. in the event the board of county commissioners of the county authorized such procedure and so declared by resolution passed and published as required by said section. In 1925 the Legislature passed section 1, chapter 179, p. 282, Session Laws 1925, section 12582, O. S. 1931, providing for listing property for assessment of taxes in Oklahoma county, in which the provisions relating to notice to the taxpayer are practically the same as the provisions of the general act above mentioned except it requires the assessor to remain at each city or voting precinct one day for each 120 voters, or major fraction thereof, in said city or voting precinct. In 1927 the Legislature passed chapter 209, Session Laws 1927, page 258, entitled, "An act amending section 9666, Compiled Oklahoma Statutes, 1921, relating to the assessment of taxable property and providing procedure for such assessments in all counties in the state having a population of not less than 35,000 and not more than 37,400, according to the federal census of 1920, or according to any succeeding federal census, and declaring an emergency." We are not passing upon the validity of the acts of the Legislature of 1925 and 1927, for the reason that that question is not before the court, but simply call attention to the same for the purpose of showing some of the provisions of the laws of this state providing for notice to taxpayers which gives them an opportunity to voluntarily render their property for taxation. Section 9667, O. O. S 1921 [O. S. 1931, sec. 12612] provides that the county assessor shall keep his office at the county seat during the assessing period and shall remain at the county seat at least 15 days before closing his books, during which time any person who has failed to render his property shall have an opportunity to do so, provided that should any property be listed or assessed for taxation after the first day of June any year or should the county assessor, or his deputy, fail to administer the requisite oath or attest the same in the manner precribed by law or should the party rendering property for taxation fail to subscribe to the list of the assessment sheet, nevertheless it shall be binding and valid to all intents and purposes as if made in strict pursuance of law. Section 9668 [12617] provides that in all cases of failure to obtain a statement of property for any cause it shall be the duty of the county assessor to ascertain the amount and value of said property and assess the same as he believes to be the fair cash valuation thereof. Should any person, firm, or corporation refuse to list his or their property, the county assessor shall add as a penalty 50 per cent. of the fair cash valuation of the property found, which shall be entered and extended on the tax books against the person, firm, or corporation and shall be collected as all other taxes. Section 9669 requires the county as-

sessor on the first Monday in June to deliver all lists of property to the county board of equalization for the purpose of having them adjusted and equalized. Section 9670 [12614] penalizes the county assessor for failure to make out and return his assessment rolls to the board of equalization in the time and manner provided by law.

Section 9671 [O. S. 1931, sec. 12646] creates a county board of equalization to be composed of the county commissioners, and the county assessor shall be secretary of said board. It then provides that:

"The county equalization board shall meet at the county seat, and shall hold a session commencing on the first Monday in June of each year for the purpose of equalizing taxes over the county, notice of which shall be given at least ten days prior thereto in some newspaper of general circulation in the county. Provided, however, should the assessment rolls be not received from the assessor, they shall adjourn from time to time until said rolls shall have been received. Any person who may think himself aggrieved by the assessment of his property shall have the right to appear before the board for the purpose of having the assessment of his property adjusted. Complaints against the assessment shall be determined by the board in a summary manner, and the assessor's lists shall be corrected and adjusted accordingly. Provided, that an appeal may be taken from the final action of said board as provided by law. Said board shall have the authority to raise, lower and adjust individual assessments, fixing the same at the fair cash value of the property; to add omitted property and to cancel assessments of property not taxable. When any assessment has been raised, or other property added thereto, by the board, five days' notice thereof, in writing, shall be given to the owner of such property, or his agent, properly mailed to such person, at his post office address appearing on the assessment sheet, to appear at a time and place fixed in said notice, and show cause why such assessment shall not be increased or other property added thereto."

Section 9675, C. O. S. 1921 [O. S. 1931, sec. 12643] provides that appeals may be taken from all county boards of equalization to the district or superior court of the county wherein the assessment is made within 30 days after the adjournment thereof; provided, that no matter shall be reviewed on appeal which was not presented to the board appealed from, and provided, further, that every appeal shall state expressly the objections to the assessment and relief sought; provided, further, that appeals may be taken from the district or superior courts to the Supreme Court, as provided by the Code of

Civil Procedure. Section 9685, C. O. S. 1921 [O. S. 1931, sec. 12652] provides that in order to perfect his appeal the party appealing shall file a notice of his appeal with the county clerk of the county wherein the assessment was made, if appeal be taken from the county board of equalization. In such notice shall be stated the grounds of appeal. During the pending of such appeal the party appealing shall not be required to pay taxes upon the property in regard to the assessment of which the appeal is taken. Section 9686, C. O. S. 1921 [O. S. 1931, sec. 12653] provides that:

"The proceedings before the board of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made."

Section 9683, C. O. S. 1921, provides that the board of county commissioners of each county or a majority thereof shall constitute the board of equalization for the county. This section was amended by the Session Laws of 1931, c. 66, art. 11, sec. 1, page 265 [O. S. 1931, sec. 12645]. It was enacted by the Legislature of 1909, Session Laws 1909, c. 38, p. 598, and brought forward in the Revised Laws of 1910 as section 7367 prior to the passage of section 9671, C. O. S. 1921 [O. S. 1931, sec. 12646]. Section 9684, C. O. S. 1921 [O. S. 1931, sec. 12651] provides for appeals from the county board of equalization created by section 9683, and was enacted by the Legislature of 1910, Session Laws 1910, c. 87, p. 173, and brought forward in the Revised Laws 1910 as section 7368. It also was enacted prior to the laws of 1910-11, and appears to be in conflict with section 15, c. 152, Session Laws 1910-11, section 9675, C. O. S. 1921 [O. S. 1931, sec. 12643]. Neither of these sections is involved in this action, but we call attention to the same so the county assessors and county equalization boards and county attorneys on behalf of the public, and taxpayers in their own behalf, may properly proceed in such matters.

There are several sections of the Compiled Laws of 1921 and the Oklahoma Statutes of 1931 under the chapters of Revenue and Taxation and Taxation, respectively, which were enacted when the law relative to township assessors was in force and apply to that office and do not apply to assessing or equalizing assessments of property since the creation of the office of county assessor by the Legislature in 1910-11. (Chapter 152, Session Laws 1910-11, p. 331.) These sections are not involved in the case

now before us for consideration, but we call the attention of the Governor, Attorney General, county attorneys, and county assessors to the matter in order that the same may be called to the attention of the Legislature so that that branch of the government, after consideration of the subject, may, if it deems it advisable, enact a complete law on the subject of assessing, equalizing, and correcting assessments in this state, thereby eliminating conflicting sections and thus possibly prevent confusion among the county assessors of this state in assessing property. Were it not for the fact, as pointed out herein, that the law relating to assessing property, equalizing value, levying and collecting ad valorem taxes has been rendered very complicated by so many different laws enacted without expressly repealing former acts of the Legislature, we would feel inclined to call the attention of the Attorney General of this state and the county attorneys of the several counties to section 8 of article 10 of the Constitution, which provides in part that:

"* * * any officer, or other person authorized to assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

Owing to the number of tax cases that have been appealed to this court and the conflict in views concerning the correct rule of law to be applied, it might be unjust, under the circumstances, to criticize the conduct of any of the officers or persons authorized to assess values or subjects for taxation. However, many errors have been committed and we feel it our duty to call to the attention of the Legislature that conflicts do appear to exist in the laws relative to revenue and taxation, and that a simpler system should be provided retaining all of the commendable features of the law and eliminating such provisions as may burden the efficient operation and enforcement of the same.

Section 9597, C. O. S. 1921, which is the same as section 12587, O. S. 1931, provides that:

"If any real or personal property be omitted in the assessment of any year or years, and the property thereby escape just and proper taxation, at any time and as soon as such omission is discovered, the county assessor or the State Board of Equalization whose duty it is to assess the class of property which has been omitted, shall at any time, cause such property to be entered on the assessment rolls and tax books

for the year or years omitted, and shall, after reasonable notice to the parties affected, in order that they may be heard, assess such omitted property and cause to be extended against the same on the tax list for the current year all arrearage of taxes properly accruing against it, including therein interest thereon at the rate of six per cent. per annum, from the time such tax should have become delinquent. If any tax on any property liable to taxation is prevented from being collected for any year or years, by reason of any erroneous proceedings, or failure to give notice, or otherwise, the amount of such tax which such property should have paid or should have been paid thereon shall be added to the tax on such property for the current year, and if for want of sufficient time or for any other cause such assessment cannot be entered on the tax books and the tax thereon extended on the tax lists for the current year, the same shall be done the following year; provided, however, that whenever any real or personal property, on account of same being grossly undervalued on account of false representations or concealments made by the owner or owners or their agents in rendering the same for assessment, and in the assessment made in any year or years, the property thereby escapes just and proper taxation, at any time within three years thereafter the county assessor or the State Board of Equalization, whose duty it is to assess the class of property which has been so undervalued, shall within three years from the date of such undervaluation, cause such property to be entered on the assessment roll and tax books for the year or years so undervalued, and shall, after reasonable notice to the party affected in order that he may be heard, reassess such undervalued property and cause same to be extended against said property on the tax lists or rolls for the current year with all arrearage of taxes thus properly accruing against it, including interest thereon at the rate of six per cent. per annum from the time such tax should have become delinquent; and provided further, that as to such property so grossly undervalued in assessment, no contract shall be made with anyone by either the State Board of Equalization, or the board of county commissioners, to pay anyone a commission for in any way causing same to be reassessed; but it shall be the duty of the State Board of Equalization, with the assistance of the Attorney General, and the county assessor, with the assistance of the county attorney, to make and cause such reassessment to be made, as aforesaid; provided, however, this shall not be construed to prevent boards of county commissioners from making contracts for the discovery of omitted property, as provided by section 7449 of the Revised Laws of Oklahoma. 1910." (Section 9798. C. O. S. 1921, and section 12346, O. S. 1931.)

Section 9792, C. O. S. 1921 [O. S. 1931, sec. 12644] provides for the correction of errors, on the assessment roll or tax list, in the name of the person assessed or taxed, by the county assessor prior to delivery of tax roll to treasurer and by the treasurer after the delivery of rolls to him, and for the collection of the tax from the proper person if his property be taxable and can be identified by the assessor or treasurer; and when the treasurer, after the tax list is committed to him, shall discover any error in the amount of tax as extended on the rolls, or if he shall ascertain that land or other property is omitted, he shall report the fact to the county assessor, who, upon being satisfied thereof, shall as to such error make such correction thereof as the facts may require.

Section 9792 [12644] is an amendment to section 7448, R. L. 1910, and was enacted by the Legislature in 1919 with the emergency clause and approved April 1, 1919. Section 9664, supra, was enacted by the same Legislature and approved March 11, 1919.

Section 6, article 10, of our Constitution exempts from taxation certain property therein specified. Sections 12319, 12328, and 12329, O. S. 1931, also have to do with exempt property. There are other sections of the Code relating to exemptions which are not necessary to a consideration of this case.

Section 9580, C. O. S. 1921, Session Laws 1919, chapter 300, section 1, approved March 29, 1919, same as 12329, O. S. 1931, was held valid in Re Assessment Beta Theta Pi Corporation, 108 Okla. 78, 234 P. 354. Section 12319 was before the court in Board of Commissioners v. Sisters of Sorrowful Mother, 141 Okla. 32, 243 P. 984. Section 6, article 10, of the Constitution has been construed in numerous decisions of this court. The bearing we think these sections of the Constitution and Code have upon the case under consideration will be considered later herein. In 1928, Initiative Law No. 100, creating a Court of Tax Review and providing the procedure for hearing protests and determining the alleged illegality of any tax levy properly commenced in said court, was enacted by the people, but the proceedings in this case are governed by section 9971, C. O. S. 1921 [O. S. 1931, sec. 12665] which in part provides:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. * * * All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein; if, upon final determination of any such suit, the court shall determine that the taxes were illegally collected, as not being due the state, county or subdivision of the county, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor."

There are, however, provisions of law which provide for an appeal, and in those cases the proceedings are not governed by section 9971, supra. We shall refer to such provisions and the decisions construing same later. In Bretz, County Treasurer, v. El Reno State Bank, 71 Okla. 283, 177 P. 362, this court held that:

"Where the assessment of a state bank was increased, without notice, by the county board of equalization adding the value of state public building bonds held by the bank, which were exempt from taxation, the tax was illegal to the amount of such increase, and the bank's remedy was to pay the tax levied, and sue for recovery of the illegal portion in the manner provided by section 7, subd. B, art. 1, c. 107, Sess. Laws 1915."

Sections 9648 and 9674 [O. S. 1931, secs. 12639, 12642] provide remedies for any person who may have complaint to offer relative to the assessment of property for taxation in addition to the remedy afforded by section 9971 [O. S. 1931, sec. 12665] and such remedies must be resorted to in cases where they apply, and where the aggrieved taxpayer has not been deprived of a right by reason of the failure of the assessor or equalization board to give him notice. When the taxpayer has not been given timely notice of an increase in his individual list as rendered to the assessor or of an increase made by the county equalization board in his individual list, he may resort to an action under section 9971 [12665]. In Hays v. Bonaparte, County Treasurer, 129 Okla. 258, 264 P. 605, this court declared the rule as follows:

"When property has been voluntarily listed for taxation by the owner and the valuation placed thereon by him is increased by the assessor or by the board of equalization without timely notice to him or without his knowledge or consent and he is

thereby deprived of his right of appeal, his remedy is to pay the taxes under protest and proceed in accordance with the provisions of section 9971, C. O. S. 1921."

In that case the property was duly rendered for taxation at the valuation of $2,500, and at the time plaintiff in that action rendered it he advised the county assessor that the valuation was too high and he was advised that said amount would be reduced and that he would be notified of such reduction. Thereafter plaintiff therein received notice from the assessor advising him that said valuation was fixed at $1,900. The property was assessed on or before June 1, 1925, at $1,900 and was assessed by the officer charged with the duty of making such assessment, and after it had been so assessed and the value fixed thereon by the proper officer, the assessment was duly stipulated and agreed upon between him and the assessor, then after said rendition of assessment was legally made it was increased to $2,800 without any notice to the plaintiff, and without his knowledge or consent, and he did not discover the increase in the valuation until he went to pay the taxes, which time was more than five months after the adjournment of the county board of equalization. Mr. Justice Hefner, in delivering the opinion of the court, said:

"If, under these allegations, the illegality of the tax arises by reason of an action from which the laws provide no appeal, then it was the duty of the plaintiff to bring his action in the manner provided in section 9971, supra. He could not prosecute his remedy before the equalization board because, under the allegations, he had no notice of the change in the valuation until five months after the equalization board had adjourned. There are certain cases in which the county commissioners may issue a certificate of error. A portion of section 9674, C. O. S. 1921, is as follows: '* * * And if upon such hearing it appears that any personal or real property has been assessed to any person. firm, or corporation not owning or claiming to own same, or that property exempt from taxation has been assessed, it shall be the duty of the board of county commissioners to correct such error, and the county clerk, upon the order of said board, shall issue a certificate of error to the county treasurer, stating the amount of such correction, which amount the treasurer shall deduct from the original assessment or assessed amount. * * *'

"This statute confers upon the county commissioners jurisdiction in two classes of cases. A portion of section 9648, C. O. S. 1921, in substance, provides that where the same property, whether real or personal, has been assessed more than once for the taxes of the same year or has been assessed for the taxes of a year to which the same was not subject, the board of county commissioners is empowered to issue a certificate of error. These two sections give the county commissioners jurisdiction in at least three classes of cases in which the board is authorized to issue certificates of error in assessment. They are as follows: First, when property has been assessed to any person not owning or claiming to own the same; second, when property has been assessed that is exempt from taxation; third, when property has been assessed more than once for the taxes of the same year or has been assessed for taxes for a year to which the same was not subject to taxation. Neither of these sections confers on the county commissioners jurisdiction in a case where the valuation has been raised by the county assessor or by the board of equalization."

In the case of In re Rolater, 67 Okla. 215, 170 P. 507, the second paragraph of the syllabus is as follows:

"The purpose of section 7324, Rev. Laws 1910, in requiring the assessor to give the person listing property a copy of the schedule, when the assessor places an increased value on the property, is to give notice of the increased valuation so the owner may protest, and when it appears the property owner appeared before the board and made a protest, which was heard and considered, the failure of the assessor to deliver a copy of the schedule will not render the assessment void."

Section 7324, R. L. 1910, is the same as section 9619, C. O. S. 1921 [O. S. 1931, sec. 12598] a portion of which is as follows:

"* * * All property is to be valued to the assessor, by the person whose duty it is to list the same, but the assessor may place a different value on the same if he is satisfied that the value so given is not correct and he shall give to the person so listing the same a copy of the schedule; and the assessor shall seek to have assessed the same classes of property at a uniform value throughout the county."

In State et al. v. State ex rel. Schull, Bank Commissioner, supra, we held that:

"Under section 9674, C. O. S. 1921, the board of county commissioners of each county is authorized to hear and determine allegations of erroneous assessments, mistakes. or errors made in assessing or preparing the tax rolls or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such erroneous assessment, error, mistake, or difference."

We also held that:

"The words 'erroneous assessment' as used in section 9674, were not used in the act of the Legislature in the sense of 'illegal,' but that the assessment was inequitable merely."

In addition to the grounds mentioned in Hays v. Bonaparte, supra, upon which the board of county commissioners may grant relief, it may on certain conditions determine whether or not an assessment is "an erroneous assessment," that is, an inequitable assessment, and any party in interest may appeal from the decisions of the board of county commissioners to the Supreme Court.

We have set out herein sections and portions of sections and referred to other sections of the Code designated to secure order, system, and dispatch in assessing, levying, and collecting taxes. From a consideration of these sections it will be seen that the Legislature has provided at least three ways of placing property upon the assessment rolls: (1) The owner may give to the assessor a list of his property; (2) in case any property for any cause is omitted the assessor may himself make out and return said list; and (3) the board of equalization at its regular meeting, by giving the proper notice, may add any omitted property to such assessment roll. If the assessment be made in any one of the three methods, jurisdiction is conferred upon the taxing officials and the procedure thereafter is the same in each case. Weatherly, County Treasurer, v. Sawyer, supra. We, therefore, hold, that a compliance with section 9664, C. O. S. 1921 [O. S. 1931, sec. 12611] by the county assessor is not a condition precedent to the placing of personal property upon the assessment rolls. The Legislature has also provided for any aggrieved taxpayer appearing before the county equalization board, and in the event of a failure to appear before the equalization board for good cause shown they may appear before the board of county commissioners as provided for in sections 9674 and 9648, C. O. S. 1921 [O. S. 1931, secs. 12642, 12639] and in the event they are deprived of a remedy to relieve them of a wrong where the illegality of the tax is alleged to arise by reason of some action from which the law provides no appeal, the aggrieved person may pay his taxes under protest and then bring an action to recover the portion of the taxes that may be illegal, and the court shall determine the cause from the pleadings and the evidence and render judgment showing the correct and legal amount of taxes due by such person. It will be noticed that the 1919 session of the Legislature, which enacted what is now section 9664, C. O. S. 1921 [O. S. 1931, sec. 12611] also enacted section 9792 [12644] with the emergency clause, which provides that:

"If on the assessment roll or tax list there be any error in the name of the person assessed or taxed the name may be changed by the county assessor prior to delivery of tax rolls to treasurer and by the treasurer after the delivery of rolls to him, and the tax collected from the proper person if his property be taxable and can be identified by the assessor or treasurer; and when the treasurer, after the tax list is committed to him shall discover any error in the amount of tax as extended on the rolls, or if he shall ascertain that any land or other property is omitted, he shall report the fact to the county assessor, who, upon being satisfied thereof, shall as to such error make such correction thereof as the facts may require, and as to omitted property shall enter the same upon his assessment roll and assess its value; and the assessor shall thereupon certify all such corrections and additional assessments to the treasurer, who shall make proper entry thereof on the tax roll and collect the tax so certified as in other cases."

Every taxpayer is interested in knowing that taxation shall be uniform upon the same class or subject of taxation so he may determine whether or not his property is assessed at a higher valuation than the property of other taxpayers; also in knowing whether any property has been grossly undervalued or omitted; if so, he may appear before the county equalization board and present his complaint and have the valuation equalized upon property which has not been uniformly assessed and have property that has been omitted or grossly undervalued properly assessed, in order that the taxpayer who has voluntarily rendered his property may not be burdened with more than his just share of maintaining the public school system and the town, city, county, and state government. The several school districts, towns, cities, and counties are interested in seeing that the property is properly assessed in order that necessary revenue may be raised so that the several subdivisions of the state government may properly function.

Prior to the time the Legislature enacted section 9664 [O. S. 1931, sec. 12611] supra, it had enacted laws authorizing the assessor to increase the list or rendition voluntarily made by any individual and requiring the assessor to give notice of such raise to the person rendering his property; authorizing the assessor to assess property where the

owner failed or neglected to render his property; providing for the assessor assessing and penalizing the property owner who refuses on demand of the assessor to render his property for assessment; for placing omitted property upon the assessment rolls and tax rolls; for striking from the assessment rolls property exempt from taxation. Many of these sections had been tested in court and finally determined by the Supreme Court, so it appears to us that in enacting section 9664, supra, the Legislature had in mind, and that it was the legislative intent, that the publication of the notice required in said section was to impart knowledge to the taxpayers in the county, showing the names of persons listing personal property for taxation and the value fixed upon such property, and for the guidance of the officers in the conduct of business devolved upon them, and designed to secure order, system, and dispatch in assessing the property for taxation rather than for the protection of the individual taxpayer to prevent a sacrifice of his property and by disregard of which his rights might be, and generally would be, injuriously affected, because, as we have heretofore pointed out, the aggrieved party is afforded a speedy and certain remedy for every wrong in the matter of assessment, levying, and collection of taxes upon his property. However, when the notice is published giving the name and assessed value of personal property for ad valorem taxation, every citizen may, without going to the assessor's office and inspecting the public records, readily determine from the published notice whether or not the tax assessed on personal property in the county is uniform upon the same class of subjects of taxation; and the officers of the school districts and several governmental divisions of the state may determine whether or not property subject to taxation has been omitted from the assessment rolls or grossly undervalued, or property exempt from taxation has been placed upon the assessment rolls, or any errors occur in the name of the owner of property, or whether property has been assessed in the name of the wrong owner or doubly assessed or an increased value has been made by the assessor by mistake in entering the same upon the assessment rolls, so that such omissions, mistakes, or errors may be corrected before the county equalization board meets, or by such board at its regular meeting, or any taxpayer may appear before the equalization board to have grossly undervalued property properly assessed and omitted property added by the county equalization board and prevent errors in the assessment rolls and tax rolls and relieve taxpayers from appearing before the board of county commissioners as provided for in sections 9648 and 9674 [O. S. 1931, secs. 12639, 12642] and thus secure order, system, and dispatch in assessing property and preparing the assessment and tax rolls. While section 9664 [12611] requires a copy of the notice to be mailed by the publisher to each person assessed as shown in the published list, such taxpayer cannot possibly be materially prejudiced by reason of his failure to receive such notice, because, if he had voluntarily rendered his property for taxation and his valuation had not been increased, the mailing of a copy to him of the published notice would be useless except to give notice of the names of the other persons listing personal property for taxation and the value fixed thereon by the owner so such taxpayer might determine whether or not such tax as assessed was just, uniform, and reasonable. If his personal property assessment as rendered by him was increased by the assessor, then the assessor is required to give such taxpayer notice of the increase, and certainly it would not be contended that if a taxpayer who voluntarily rendered his property for assessment would not be materially affected by a failure to publish such notice, any person who neglects, fails, or refuses to render his property should be heard to complain so long as his assessment as rendered by the assessor is just, uniform, and reasonable. If any assessment is inequitable or erroneous, the person injuriously affected may appear before the county equalization board and present his complaint, and if he was prevented from appearing before such board on account of failure to have mailed to him a copy of the notice containing his rendition, then for good cause shown he may appear before the board of county commissioners, and finally, if he does not have a remedy under sections 9648 and 9674 [O. S. 1931, secs. 12639, 12642] then, upon a proper showing by reason of some action from which the law provides no appeal, he may pay his taxes under protest and proceed under section 9971 to recover back such portion, if any, as the court may determine upon the trial of said cause is in excess of the legal and correct amount due, but he cannot fail, neglect, or refuse to render his property for taxation and defeat payment of a just tax upon the property which was subject to taxation in the county for the year upon an assessment made by the assessor in the manner provided by law after the owner had neglected or failed to render

his property for assessment. If the county assessor can secure a bid from some newspaper to print the notice provided for in section 9664 for the amount the law authorizes to be paid the publisher and the board of county commissioners include in their annual estimate an item for such publication and the excise board approves the estimate and levies a tax for that purpose, we think that the assessor should comply with that section relating to his official duties, but we do not think that a failure on the part of the county assessor to comply with the section is a condition precedent to the county assessor placing any assessment upon the assessment rolls and does not deprive the county equalization board of the power to consider and equalize assessments and perform the other duties required of the county equalization board.

Statutory requirements intended for the guidance of officers in the conduct of business devolved upon them and designed to secure order, system, and dispatch in proceedings, and by disregard of which the rights of parties interested cannot be injuriously affected, are not usually regarded as mandatory, unless accompanied by negative words, importing that the acts required shall not be done in any other manner or time than that designated. Requirements intended for the protection of the citizen and to prevent a sacrifice of his property, and by disregard of which his rights might be and generally will be injuriously affected, are not directory, but mandatory. French v. Edwards, 13 Wallace (U. S.) 506-517, 20 L. Ed. 702. While we do not think that section 9664 [O. S. 1931, sec. 12611] was intended for the protection of the individual taxpayer, if it were, we fail to see where a failure of the assessor to publish the notice giving the name of the owner and the value of his personal property assessment might or generally would injuriously affect the rights of such taxpayer. If he failed or neglected to list his property and it is listed by the assessor uniformly with like subjects of taxation, he is not injuriously affected. Under the provisions of the Code an opportunity is afforded him to appear before the equalization board or before the board of county commissioners, and if for any reason he has been deprived of any of his rights and prevented from appearing before any of these boards on account of the failure of the assessor or the equalization board to give notice of an increase in the value of his assessment, he still has his remedy in the courts, as fully pointed out heretofore.

The plaintiff further contends that by reason of the failure of the county assessor to publish notice as required by section 9664, supra, if he was required to pay the taxes assessed against his property by the county assessor, he would be deprived of his property without due process of law. We cannot agree with this contention. Due process of law is shown when opportunity is conferred to invoke the equal protection of the law by judicial proceedings appropriate for the purpose and adequate to secure the end and objects sought to be attained. Chicago, B. & Q. R. Co. v. State ex rel. City of Omaha, 47 Neb. 549.

The plaintiff's next contention is that this case is governed by the rule of law announced by this court in Hays v. Bonaparte, supra, and at pages 22 and 41 of its brief quotes from that case. There is an error in the quotation as printed in the brief. In the opinion the language is, "The notice to the property owner provided for in sections 9619 and 9671, supra, is not directory, but mandatory." In the brief it is quoted thus: "The notice to the property owner provided for in sections 9619 to 9671, supra, is not directory, but mandatory." The word "to" is substituted for the word "and." Section 9664 [12611] involved in this action, falls between these two sections. We do not feel that counsel inserted the word "to" where the word "and" appears to mislead the court, but we call the error to the attention of counsel, as we think the error in the briefs should be corrected. Hays v. Bonaparte, supra, to our minds, is quite distinguishable from the case at bar. From an examination of the admitted facts in this case as shown by plaintiff's petition, it seeks to avoid its entire personal property assessment solely upon the ground that the assessor failed to publish the name of the owner and the value of its personal property as required by section 9664 [O. S. 1931, sec. 12611] supra. In the Hays v. Bonaparte Case, Hays voluntarily rendered his property for assessment and at the time advised the county assessor that the valuation was too high, and he was advised by the assessor that said amount would be reduced and that he would be notified of such reduction. Thereafter, Hays received notice from the assessor advising him that said valuation was fixed at $1,900. Later, without notice to him, the assessment was increased to $2,800, and he did not discover the increase in the valuation until he went to pay his taxes. In that case this court held that it was proper for him to pay his taxes under

section 9971 [O. S. 1931, sec. 12665] on the correct valuation as fixed by the assessor at $1,900 and be relieved of the excess value placed on the property without notice to the owner.

Our attention is also called to Nelson v. O. C. & W. Ry. Co., 24 Okla. 617, 104 P. 42, wherein this court held that:

"Where the statute requires a series of acts to be performed before the owners of property are properly chargeable with taxes, such acts are conditions precedent to the exercise of the power to levy taxes, and all the requirements of the statute must be complied with, or they cannot be collected."

The rule announced in the Nelson Case has been many times followed in later decisions by this court, and as an abstract proposition of law it is correct. The language is taken from Hewes, Respondent, v. Reis et al., Appellants, 40 Cal. 255. That was a case in which a street assessment in San Francisco was attempted to be levied against the property of an abutting property owner. The law required the posting of notice inviting proposals for the execution of work in the office of the superintendent of streets for a period of five days, and the notice was posted for a period of three days instead of five as required by law. The court said:

"The law provides that before giving out any contract the board shall cause notice to be published and posted for five days inviting sealed proposals. In the notice given, parties who might bid are expressly notified that bids would not be received after the third day. This is clearly a violation of the statute, and in a matter affecting the substantial rights of persons interested, and there can be no question that ordinarily such a defect would render subsequent proceedings entirely void."

The rule announced in the Nelson Case applies, and we have applied it, only in cases in which the failure of the officer to perform some duty might and generally would affect the substantial rights of persons interested. We have tried to make it clear that if the failure of the assessor to perform a statutory duty might or generally would affect the substantial rights of the persons interested, then a compliance with the statute would not be directory, but mandatory. We have also tried to clearly point out that a failure of the assessor to comply with section 9664 [O. S. 1931, sec. 12611] would not affect the substantial rights of persons interested because the Legislature has wisely provided remedies and forums in which all aggrieved persons may be heard to correct mistakes, omissions, errors, and irregularities in the assessing, equalizing, levying, and collecting taxes so as to prevent an entire assessment of property from being held void because of some mistake, omission, error, or irregularity in the manner of assessment or levy of a tax.

So, we hold that any person owning personal property in a county subject to taxation therein, who fails or neglects to render the same for taxation in the manner and within the time provided by law, cannot avoid the assessment of such property by the county assessor solely upon the ground that the assessor failed to publish the name of the owner and the value of the personal property assessed.

A petition filed in a proceeding commenced under section 9971, C. O. S. 1921 [O. S. 1931, sec. 12665] which does not allege facts showing wherein the party commencing the action was injuriously affected by reason of the failure of the county assessor to publish notice containing the name and assessed value of the personal property of such party as required by section 9664, C. O. S. 1921 [O. S. 1931, sec. 12611] does not state facts sufficient in law to constitute a cause of action.

It is suggested by the plaintiff that, "At an early date in the history of our country and prior to the organization of our government our forefathers believed and said that 'Taxation without representation is tyranny'." We do not see the application this eloquent statement of our forefathers has to the case at bar. The plaintiff operates its business under laws enacted by a Legislature elected by the people; the city furnishes it streets upon which to transport its property and traffic officers and signals to prevent damage to its employees and property while being transported over the streets of said city and the city is required to keep such streets in a reasonably safe condition of repair; the city furnishes police officers and the county a sheriff to apprehend persons that may burglarize plaintiff's buildings, rob its offices or steal its property; the county furnishes the county attorney to prosecute such offenders; and the state and county furnish courts in which such offenders may be prosecuted, and if convicted the state furnishes prisons in which they may be punished for crime; the state furnishes the courts in which it may bring actions to redress its wrongs or enforce its rights; the school districts furnish public schools in which the children of its officers and employees may be educated. All of these governmental agencies require revenue to properly func-

tion, and without revenue derived from just taxation all of these governmental agencies must cease to function and organized government fail. So, it appears to us more like the plaintiff might be seeking representation without taxation than to be in a position to complain of taxation without representation.

Plaintiff has cited numerous former decisions of this court which it contends support its contentions. We have carefully examined the authorities cited and fail to see where any of them have any bearing on the case at bar. Some of the decisions disclose a state of facts where the county assessor or equalization board raised assessments voluntarily made without giving notice to the persons interested and the court held that the raise in assessment withou' notice was illegal and set aside the tax to the extent of the raise. Other decisions relate to illegal levies made by township and school districts, and others to cases where a city acting under a charter form of government failed to prepare a financial statement and estimate of needs and submit the same to the county equalization board as required by law, the court holding in such instances that the excise board was without jurisdiction to make the levies. However, in each case where the error complained of was only leveled at the assessment of property the taxpayer was only relieved to the extent of the raise made by the assessor or equalization board without notice to the taxpayer. In the case under consideration the owner never rendered his property for assessment and he does not allege that it was assessed at a higher valuation than other personal property of the same kind and character. If, as contended by the plaintiff, the property was never assessed for the reason that the assessor was without jurisdiction to assess same, because he failed to give the notice required by section 9664 [O. S. 1931, sec. 12611] it could now be assessed as omitted property, and without an allegation of fact in the petition showing that the assessment as made by the county assessor injuriously affects the rights of plaintiff his petition fails to state facts sufficient to call upon the trial court or this court on review to grant him any relief.

For the reasons herein stated, we are of the opinion that the trial court committed error in overruling the demurrer of the defendant to the petition of the plaintiff. The cause is, therefore, reversed and remanded to the district court of Oklahoma county, with directions to sustain the demurrer of the defendant to the petition of the plaintiff and render judgment against the plaintiff for all costs.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., concurs in conclusion. CULLISON, absent.

Note.—See under (2) 25 R. C. L. 1006; R. C. L. Perm. Supp. p. 5639; R. C. L. Pocket Part, title "Statutes," §247. (4) 25 R. C. L. 769; R. C. L. Perm. Supp. p. 5608; R. C. L. Pocket Part, title "Statutes," § 16. (5) 25 R. C. L. 770; R. C. L. Perm. Supp. p. 5608; R. C. L. Pocket Part, title "Statutes," § 17.