### In re MOORE.
### TULSA COUNTY et al. v. MOORE.

No. 26809. March 1, 1938.

Rehearing Denied March 29, 1938.

Holly L. Anderson, County Atty., and Fred A. Fulghum, Asst. County Atty., for plaintiffs in error.

Geo. S. Ramsey, Villard Martin, and Garrett Logan, for defendant in error.

GIBSON, J. The defendant in error on January 3, 1935, moved some of his cattle from Okmulgee county to Tulsa county for the purpose of feeding them for market. The county assessor of Tulsa county immediately listed these cattle for taxation. Shortly thereafter, but before March 1st, the defendant in error listed the same cattle for taxation in Okmulgee county and they were duly assessed there. After the listing in Okmulgee county the defendant in error made complaint against the Tulsa county listing, and filed affidavit with the county board of equalization of Tulsa county, showing a listing of the cattle in Okmulgee county. A hearing was had before the board, and from an adverse ruling defendant in error appealed to the district court, which reversed the board, holding that the assessment in Okmulgee county precluded the listing of the same cattle in Tulsa county for the year 1935.

On appeal from the judgment of the district court the taxing officials assert: (1) That the equalization board was without jurisdiction to entertain the complaint, and the district court on appeal was also without jurisdiction; (2) that the court erred in holding that the cattle could not rightfully be taxed in Tulsa county.

On the first proposition it is urged that the Legislature in 1933 (ch. 115, S. L. 1933) amended section 12660, O. S. 1931, in such a way as to take away or exclude the right to a hearing before the board and to an appeal therefrom in circumstances such as here. The former section gave the right of appeal to "any taxpayer feeling aggrieved at the assessment as made by the assessor, or the equalization as made by the county board of equalization," whereas the amended section gives the right to appeal "in any case where the county assessor or the county board of equalization shall increase the valuation of any property above the value returned by the taxpayer." It is argued that the latter wording is not sufficient to include a case where the taxpayer does not return his property for assessment, but includes only those cases where a return has been made by the taxpayer and an increase over the valuation then placed by him on his property is attempted. In other words, the contention is that there is an increase in the valuation of property if the assessment is made by the assessor or board. in any amount in excess of the value returned by the taxpayer, be his return ever so nominal, but there is no increase if the assessor or board assesses his property at any amount above zero when he makes no return. In the latter case, so it seems to be contended, he must permit the assessment to stand, budgets to be based thereon, levies to be computed, and the assessment and taxes to be certified to the treasurer, and then make application before another tribunal to obtain relief.

Section 12646. as amended by the 1933 act, gives the board of equalization the authority "to add omitted property, and to cancel assessments of property not taxable." It also provides that where any change is made in the assessed valuation of any property of any taxpayer, such change shall not be final until the taxpayer whose property is so raised or added is afforded an opportunity to be heard after due notice.

The Legislature did not repeal section 12653, O. S. 1931, which provides that:

"The proceedings before the board of equalization and appeals therefrom, shall be the sole method by which assessments or equalizations shall be corrected or taxes abated.".

This section was construed in the case of Board of Com'rs of Canadian Co. v. Tinklepaugh, 49 Okla. 440, 152 P. 1119, wherein this court held:

"This section was the law at the time of the happening of the matters and things complained of, and provided a speedy and adequate remedy, by means of which defendants in error might have had relief from any inequality or injustice done them."

This section recognizes the right of appeal from the board of equalization in order to abate a tax or correct an assessment.

The amended act provides for an appeal only when the assessment is increased. We think, however, that an assessment is increased within the meaning of the act when it is increased from zero or no assessment as well as when it is increased from some valuation, nominal or otherwise. The purpose of the taxing procedure is to give the right to be heard to those taxpayers whose property is assessed beyond what they returned to the assessor, also where it is arbitrarily assessed in the absence of a return, and to give them a right to appeal to the district court.

The confusing nature of the tax laws before the 1933 amendment was called to the

attention of the taxing authorities and possibly thereby to the Legislature by this court, in the case of Bonaparte, County Treas., v. American Vinegar Mfg. Co., 161 Okla. 54, 17 P.2d 441, decided in December, 1932. An examination of that case in connection with the amendment reveals that some of the repealed acts are specially referred to as confusing. In that case, however, this court pointed out that one who had not rendered property for taxation had the right to appear before the board of equalization to be heard on any assessment thereof made by it. We do not think that the Legislature intended to take away this right and thereby perhaps deny the equal protection of the law which the taxpayer was theretofore enabled to invoke by appearing before the board. Considering, therefore, the confusing state of the law before the act of 1933 and the acts which the Legislature took care to leave on the statute books, as well as those which it repealed and amended, we conclude that it intended to preserve to any taxpayer who was to be charged with a larger percentage of tax burdens that he had made probable by his returns, the right to be heard and to appeal, thereby safeguarding to such taxpayer not only due process of law but also the equal protection of the law.

Consideration of the procedure for taxing property fortifies us in our conclusion herein. Various steps are taken preliminary to the levy of the tax. The purpose of the review by the board of equalization is to fix as definitely as possible the valuations of the properties assessable by it so that the total will furnish the basis for the tax levy to be made. Therefore it is desirable that all questions relating to value and taxability of property be settled by the board before these valuations are finally certified, if possible so to do. This cannot be done with certainty if the assessor and the board arbitrarily may add a large amount of property upon which returns have not been made, with no provision made for a hearing to determine the validity thereof until after the equalization board had adjourned. Fictitious valuations would result and consequent confusion.

Section 12585, O. S. 1931, governs the second proposition. Under it, provision is made for the listing of cattle for taxation when, for the purpose of feeding, they are moved from one county to another between September 1st in one year and April 15th of the following year. It provides that such cattle shall not be listed for taxation in the county to which moved if the owner shall show by affidavit that said property has been listed for taxation for that year in another county. Obviously this affidavit, to have any effect, must be filed with the assessing officers and its sufficiency determined by some assessing tribunal. Under the statutes first considered above, it is also obvious that the board of equalization is the proper authority to consider this affidavit under its power to add omitted property or to cancel assessments of property not taxable. The owner of the cattle has until the first of March to list the cattle so moved, if moved before that date. He cannot file an affidavit before January 1st because, as elsewhere, procedure for assessment in the county of origin does not begin until January 1st. It follows, therefore, that his affidavit is in time if filed within the period after he has listed the property in the county of origin and before the board of equalization of the second county has adjourned. We need not here consider what his remedy would be if he has no notice that there is a proposed listing in the county where located for pasture, since in this case the taxpayer had actual notice in time to appear before the board.

This special statute under consideration has not been repealed. It is mandatory in its terms and forbade the listing in Tulsa county where there was a timely listing in Okmulgee county. When it was made to appear, therefore, that the cattle had been listed and assessed in Okmulgee county within the period of time the taxpayer had the privilege of listing his property, the assessing officers of Tulsa county were prohibited from listing or assessing the same cattle for taxation in Tulsa county, and the listing in Tulsa county constituted an assessment which should have been canceled by the board.

The method of making a record and taking appeal to the district court followed, in the main, is the procedure provided by amended section 12660. No objection thereto was made in the court below, and we think it sufficient.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and WELCH, PHELPS, CORN. and DAVISON, JJ., concur. RILEY and HURST, JJ., dissent.

HURST, J. (dissenting). The sole question for us to decide in this case, as I view it, is whether the order of the board of equalization of Tulsa county refusing to cancel the assessment of the cattle was appealable.

I agree that, under section 6, ch. 115, S. L. 1933, the board of equalization had jurisdiction of the application to strike the property from the tax rolls. Its jurisdiction is: (a) To raise valuations; (b) To lower valuations; (c) To add omitted property; (d) To cancel assessments of property not taxable.

It does not follow that, because the board had jurisdiction to hear the application to cancel the assessment, an appeal lies. Appeals are purely statutory, except as provided by the Constitution, and the courts must follow the legislative mandate as to when, in what manner, and from what orders, they may be taken. Board of Commissioners of Kingfisher County v. Guarantee State Bank (1911) 27 Okla. 736, 117 P. 216; Rogers v. Duncan (1916) 57 Okla. 20, 156 P. 678; In re Muskogee Gas & Electric Co. (1921) 83 Okla. 167, 201 P. 358; Hays v. Bonaparte (1928) 129 Okla. 258, 264 P. 605; see, also, Indian Territory Illuminating Oil Co. v. State Board of Equalization (1935) 170 Okla. 516, 41 P.2d 453; 61 C. J. 837. There is no constitutional provision applicable to the appeal in this case.

Section 12660, O. S. 1931 (in force from 1915 to 1933), provided for appeals from the county board of equalization by "any taxpayer feeling aggrieved at the assessment as made by the assessor or the equalization as made by the county board of equalization." But by section 7, chap. 115, Sess. L. 1933, this law was amended so as to provide for such appeals only where the "county board of equalization shall increase the valuation of any property above the value returned by the taxpayer." Thus it will be seen that the Legislature has provided that the only order from which an appeal may be made is one **increasing** the assessment above the **"value returned by the taxpayer."** In the instant case there was no "value returned by the taxpayer," therefore, in my opinion the order attempted to be appealed from is not the one provided by statute and the appeal does not lie.

In this connection the majority opinion states:

"The amended act provides for an appeal only when the assessment is increased. We think, however, that an assessment is increased within the meaning of the act when it is increased from zero or no assessment as well as when it is increased from some valuation, nominal or otherwise."

But this language fails to give effect to the fact that the value must be increased above the "value returned by the taxpayer" before an appeal is allowed.

As construed by the majority opinion, this statute is held, in effect, to provide that the appeal can be taken "where the county board of equalization shall increase the valuation of any property (regardless of whether the owner has made a return), or where the county board of equalization denies application to cancel assessments of property not taxable in the county." This in effect reads out of the statute the words "above the value returned by the taxpayer" and reads into the statute the right to appeal from an order denying an application to "cancel assessments of property not taxable in the county." In 25 R. C. L. 963, it is said:

"The courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the Legislature. They cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. If the true construction will be followed with harsh consequences, it cannot influence the courts in administering the law. The responsibility for the justice or wisdom of legislation rests with the Legislature, and it is the province of the courts to construe, not to make, the laws. There is a marked distinction between liberal construction of statutes, by which courts, from the language used, the subject matter, and the purpose of those framing them, find out their true meaning, and the act of a court in ingrafting upon a law something that has been omitted, which the court believes ought to have been embraced. The former is a legitimate and recognized rule of construction, while the latter is judicial legislation, forbidden by the constitutional provisions distributing the powers of government among the three departments, the legislative, the executive, and the judicial."

In the case of In re Assessment of Kansas City Southern Ry. Co. (1934) 168 Okla. 495, 33 P.2d 772, this court, construing this same act of the Legislature, held that the attempt of the Legislature to bind this court as to the nature of the appeal (defining it as an administrative, rather than a judicial, appeal) was ineffective as violative of the theory of separation of powers of the three departments of government as required by section 1, art. 4, of the Oklahoma Constitution. I regret to see the majority opinion do precisely what this court,

in that case, condemned the Legislature for doing; for, as I view it, the effect of the majority opinion is, not to carry out the plain intention of the Legislature, but to authorize an appeal where the Legislature did not intend for an appeal to exist. Our right to construe a law enacted by the Legislature does not include the right to "amend or change the law under the guise of construction." See 59 C. J. 945, notes 52 and 55. I do not know why the Legislature, in section 7 of the act in question limited the appeal to an order in but one instance, after giving the board jurisdiction to make orders in four instances as was done in section 6, but that is a matter committed exclusively to the judgment of the Legislature, and the court has no right to question its wisdom. Suffice it to say that under the law prior to the amendment (sec. 12060. O. S. 1931), the appeal in this case would have been authorized, but under the amendment I think it is not.

For these reasons, I dissent.