I. T. K. v. MOUNDS PUBLIC SCHOOLS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:I. T. K. v. MOUNDS PUBLIC SCHOOLS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 I. T. K. v. MOUNDS PUBLIC SCHOOLS
2019 OK 59
Case Number: 115069
Decided: 09/24/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 59, __ P.3d __

 



 

I. T. K., a minor individual, by and through his parents and natural guardians IAN KNIGHT and CAROLYN LEFFEW, Plaintiff/Appellant,
v.
MOUNDS PUBLIC SCHOOLS, and WILLIAM RICHARD KNOX, an individual, Defendants/Appellees.

ON CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIV. III

¶0 Plaintiff, a child, by and through his parents, brought a Governmental Tort Claims Act action in the District Court of Okmulgee County. The Honorable Ken Adair, District Judge, determined plaintiff's action was untimely and granted defendants' motion to dismiss, and plaintiff appealed. The Oklahoma Court of Civil Appeals, Div. III, affirmed the District Court's order, and plaintiff sought certiorari. We hold: (1) A Governmental Tort Claims Act (GTCA) notice of claim sent to the correct school superintendent by certified mail satisfied the mandatory requirement in 51 O.S. § 156(D) for filing the notice with the office of the clerk of the school's board of education; (2) An insurance adjuster's request for additional information did not toll either (a) the 51 O.S. § 157(A) 90-day time limit for approval, denial, or deemed denial of the claim, or (b) the 51 O.S. § 157(B) 180-day period to commence suit, when the request stated it would not extend or waive time limits; and (3) A plaintiff's letter unilaterally seeking settlement negotiations is not, as a matter of law, sufficient by itself to show an agreement pursuant to 51 O.S. § 157 to toll the GTCA time limits.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL
APPEALS VACATED; AND ORDER OF THE DISTRICT COURT AFFIRMED

Guy A. Thiessen, GT Law Firm, Tulsa, Oklahoma, for Plaintiff/Appellant.
Ammar S. Wasfi, pro hac vice, The Killino Firm, P.C., Philadelphia, PA, for Plaintiff/Appellant.
Matthew P. Cyran, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Defendants/Appellees Independent School District No. 5, Creek County, Oklahoma a/k/a Mounds Public Schools, and William Richard Knox.


EDMONDSON, J.
¶1 The three basic questions raised on certiorari are: (1) Is an Oklahoma Governmental Tort Claims notice sent by certified mail to a superintendent of a public school statutorily sufficient; (2) Does an insurance adjuster's request for more information toll the GTCA time limits if the request also states an intent for tolling to not occur; and (3) Does a unilateral request by plaintiff for settlement negotiations toll the GTCA time limits? We hold plaintiff's Governmental Tort Claims Act (GTCA) notice of claim sent to the correct school superintendent by certified mail satisfied the requirement in 51 O.S. § 156(D) for filing the GTCA notice with the office of the clerk of the school's board of education, although the superintendent did not transmit the notice to the proper clerk for filing. We hold the insurance adjuster's request for additional information did not toll the 90-day time limit for approval, denial, or deemed denial of the GTCA claim when the request expressly stated it would not extend or waive the GTCA time limits. We hold a plaintiff's letter unilaterally seeking settlement negotiations is not an agreement pursuant to 51 O.S. § 157 to toll the GTCA time limits.
I. The Case and Issues Raised by Parties
¶2 Plaintiff, a six-year-old child, by and through his parents, filed a Governmental Tort Claims Act (GTCA)[1] action in the District Court, and alleged that on January 10, 2012, William Knox, a bus driver for the Mounds Public Schools, negligently operated the bus causing the child to be injured. The record provided by plaintiff shows the child was taken to a hospital emergency room, given several diagnostic tests, and treated with 4 staples for one laceration and Dermabond for another. When he filed his District Court action more than one year later he alleged he had medical-related expenses in the amount of $6,209.30, and potential unknown medical expenses as a result of being hit by the bus. Further, he alleged pain and suffering and sought a sum in excess of $10,000.
¶3 Two weeks after the injury and on January 26, 2012, plaintiff's counsel sent a letter to both the school superintendent and school insurance adjuster. The letter states counsel's representation of plaintiff, plaintiff sustained an injury on Jan. 10, 2012, while exiting a Mounds School District bus. The letter states plaintiff received serious injuries. Counsel requested the superintendent to send all liability insurance information to the lawyer, have the school's insurance carrier contact him immediately, and preserve evidence relating to the event. The school superintendent forwarded his January 26th letter to the school district's insurance adjuster. The superintendent did not forward the original or a copy to a clerk for the board of education.
¶4 The insurance adjuster responded by a letter dated January 30, 2012. The letter acknowledged counsel's representation of the injured child, identity of the child, the insured school district, date of loss, and insurance claim number. The adjuster's letter requested information concerning the injuries claimed, names and addresses of plaintiff's doctors, witnesses, and medical authorization signed by plaintiff's guardian for release of medical information. The letter stated an investigation had been initiated into the matter. The letter also included the following separate paragraph at the end of the letter.
My communications with you and my investigation of this matter are not intended to waive any statutory exemptions from liability or time limitations imposed by the Oklahoma Tort Claims Act. Further, any settlement negotiations or discussions do not extend the date of denial of your client's claim.
The adjuster's letter contains his name, the entity he represents, mailing address in Tulsa, Oklahoma, telephone number, and email address.
¶5 One year later, on January 30, 2013, counsel for plaintiff sent a demand letter to the insurance adjuster stating it was the "first and only pre-suit formal demand in order to settle this matter without litigation." Unlike the letter of January 26, 2012, the letter of January 30, 2013, stated a demand for a specified sum of money.[2] Defense counsel responded by letter and stated the claim was time-barred. Plaintiff responded by letter and stated the time limits had been tolled. Attached to plaintiff's letter was copy of a letter plaintiff's counsel asserted he had mailed September 5, 2012, and this September letter was part of an ongoing investigation and a response to the adjuster's request for more information. Defense counsel responded and stated the September letter had never been received by defendants.
¶6 After these letters, plaintiff filed a GTCA action in the District Court on May 31, 2013, against both the school district and the bus driver. The school district and bus driver filed a combined motion to dismiss stating the GTCA notice of claim was improper, the GTCA claim was time-barred, and the bus driver was not liable to suit on a GTCA claim because he had been acting within the scope of his employment when the child was injured.
¶7 The District Court held a hearing and determined: (1) The bus driver was acting within the scope of his employment and should be dismissed as a party; (2) The letter received by the insurance adjuster and superintendent in January 2012 was a notice of a GTCA claim provided to the school district; (3) The letter of the insurance adjuster did not toll the GTCA time limits; (4) The claim was deemed denied 90 days after this date; (5) The trial judge had doubts whether the letter of September 2012 had been mailed as asserted by counsel; (6) The content of the September 2012 letter was insufficient to create an agreement to toll or extend the GTCA time limits; and (7) Plaintiff "failed to comply with both the 180 day rule and one-year rule." The trial judge granted the defendants' motion to dismiss with prejudice.
¶8 Plaintiff appealed and raised the following assignments of error in his petition in error.
1. The trial court stated plaintiff was in substantial compliance with the notice requirements in 51 O.S. § 156, but the Journal Entry of Judgment does not state such;
2. Trial court erred in applying 51 O.S. § 157 because the adjuster's letter of January 30, 2012, tolled the time limits in § 157;
3. The September 5, 2012 letter from plaintiff's counsel "started anew the 90-day period for an action on the claim under 51 O.S.Supp.1992 § 157;"
4.The trial court erred because the September 5, 2012, letter was "providing additional information and confirming time to evaluate the claim and upon which to negotiate a settlement, was confirming in writing of additional time to negotiate a settlement starting anew the 90-day period for an action on a claim under 51 O.S.Supp.1992 § 157;"
5. The trial court erred by determining that even if defendants never received the September 5th letter plaintiff's "January 30, 2013 demand packet provided additional information to evaluate the claim and upon which to negotiate a settlement in response to Defendant/Appellee's request, thereby starting anew the 90-day period for action on the claim under 51 O.S.Supp.1992 § 157, making Appellant's May 31, 2013 filing of the action timely;" and
6. The trial court erred in basing its dismissal "on a 'one year rule' applied to the May 13, 2013 filing of the action in accordance with 51 O.S.Supp.1992 § 157."
The GTCA generally precludes naming of individual state employees for tort claims arising in the scope of their employment,[3] and plaintiff's assignments of error do not challenge the trial court's dismissal granted to the bus driver.
¶9 The Oklahoma Court of Civil Appeals, Div. III, affirmed the District Court's order dismissing plaintiff's action with prejudice. The appellate court concluded no written notice had been filed with the clerk of the school board by plaintiff's counsel and such was required by 51 O.S. § 156(D). The reasoning relied, in part, on this Court's explanation in Minie v. Hudson,[4] where we construed statutory language in § 156(D) as mandatory for a notice of a GTCA claim to be in writing. The Court of Civil Appeals correctly noted the distinction between a requirement considered mandatory and a requirement satisfied by substantial compliance.[5] Plaintiff sought certiorari from this Court, and both plaintiff and school district rely on our opinion in Minie v. Hudson, supra, in support of their arguments on appeal and certiorari. We previously granted the petition for certiorari.
II. Analysis
II (A). Standard of Review and Form of the Journal Entry
¶10 The combined motion to dismiss argued the District Court lacked jurisdiction because plaintiff failed to meet time deadlines jurisdictional and mandatory in nature. While some of our opinions have made summary statements explaining a jurisdictional issue reviewed on appeal presents an issue of law and is reviewed de novo,[6] this Court has often explained in more detail the nature of a decision adjudicating jurisdiction involves both law and fact issues.
¶11 For example, in Chandler v. Denton[7] we quoted from our opinion in Abraham v. Homer,[8] and we explained "each element of jurisdiction is dependent upon both law and fact."[9] When a decision by a District Court, a court of general jurisdiction, adjudicates a jurisdictional issue involving law such as statutory interpretation applied to an uncontroverted fact, then a de novo review occurs on direct appellate review.[10] To the extent we are asked to review a finding of fact made by a District Court on a motion challenging jurisdiction in an action at law, the finding and its effect on the court's order are reviewed using a clearly erroneous standard and the presence of competent evidence in the record to support the judgment;[11] and when judicial discretion is utilized for a finding or ruling a clear-abuse-of-discretion standard is used.[12] An obvious example is a decision on the admission of evidence.[13] An erroneous finding of fact by the District Court is insufficient to require a reversal on appeal[14] when the actual adjudication by the District Court includes those facts necessary to provide a sufficient evidentiary basis to support the judgment or order made by the District Court.[15] A trial court's determination or finding on credibility will not be reviewed on appeal as a ground to reverse the judgment when evidence in the record is sufficient to support the judgment rendered.[16] A District Court's finding there is an absence of sufficient facts necessary to prove a legal element turns the issue into one of law and is reviewed de novo; i.e., the evidence submitted fails as a matter of law in showing a necessary legal element.[17] These types of review are nothing new and have a result similar to federal appellate review of a jurisdictional fact and issue of law[18] in the context of a federal Rule 12(b)(1) motion to dismiss based on the absence of jurisdiction.[19]
¶12 What this means for application here is simply this: (1) A question of law is presented, and reviewed de novo, whether the judge correctly ruled plaintiff's letter of January 2012 was legally sufficient to comply with § 156(D); (2) A question of law is presented, and reviewed de novo, whether the trial judge correctly ruled that the content of the adjuster's January 2012 letter was legally insufficient to toll GTCA deadlines; (3) An issue of fact involving credibility is presented by the trial court's finding plaintiff's counsel had failed to mail the letter of September 2012, and this finding is insufficient to reverse the order due to facts in the record supporting the trial court's order; (4) A question of law is presented, and reviewed de novo, whether the judge correctly ruled the September 2012 letter was legally insufficient to extend plaintiff's time to commence a district court action; (5) A question of law is presented, and reviewed de novo, whether the judge correctly ruled the January 2013 letter was legally insufficient to extend the time to bring a District Court action; and (6) A question of law is presented, and reviewed de novo, whether the judge correctly ruled plaintiff's District Court action was untimely by application of statutes to uncontested facts of record.
¶13 Plaintiff challenges the form of the journal entry because it does not include the trial court's finding and conclusion that plaintiff's January 2012 letter was a proper notice of a GTCA claim. Nothing in the appellate record shows any objection to the journal entry made in the district court for the purpose of preserving error, and error asserted on appeal must be preserved in the trial court with cited authority or the error is deemed waived.[20] The issues surrounding the original notice of claim necessarily involve other GTCA time deadlines reviewed by the trial court and which are raised on appeal and on certiorari; and while a journal entry of judgment controls an inconsistent minute entry, the transcript of the hearing on the motion to dismiss, the court's minute, and the journal entry are sufficient to harmonize the minute and journal entry for the purpose of reviewing the preserved assignments of error as they relate to the issues raised on certiorari.[21]
II (B). Notice in Writing Filed with the Clerk of the Governing Body
¶14 A plaintiff filing a GTCA action in a District Court against a political subdivision must have previously given notice of the claim to the political subdivision.[22] The claim must have been denied, either actual or deemed denied, in whole or in part, by the political subdivision prior to commencing the GTCA action in District Court.[23] Plaintiff's petition named "Mounds Public Schools" as a defendant and alleged it is a political subdivision of the State of Oklahoma. A public school district is a "political subdivision" for the purpose of the GTCA,[24] and plaintiff was required to give notice of the claim to Independent School District No. 5, of Creek County, (Mounds Public Schools).
¶15 The GTCA provides the method for giving notice to a school district as a political subdivision. Title 51 O.S. § 156(D) states as follows.
A claim against a political subdivision shall be in writing and filed with the office of the clerk of the governing body.
A notice of claim given to the State or political subdivision is a mandatory or jurisdictional prerequisite to filing a claim for tort damages in a District Court.[25] School district's first jurisdictional challenge was that the January 26th letter did not conform to § 156 (D).
¶16 The trial judge agreed with plaintiff that the letter dated January 26, 2012, sent by certified mail to both the school superintendent and insurance adjuster substantially complied with §156(D). School district argued substantial compliance was not the proper standard, and plaintiff was required to file his notice with the Clerk of the Board of Education for Independent School District No. 5 of Creek County, Oklahoma, known as the Mounds Public Schools or Mounds School District. Defendant relied upon our 1997 opinion in Minie v. Hudson.[26]
¶17 In Minie v. Hudson we addressed whether an oral notice of a GTCA claim to a municipality satisfied § 156(D). We held the phrase "shall be in writing" expressed a legislative command, and the notice must be in writing.[27] In support of this conclusion, we observed: (1) The language "shall be in writing" was an amendment to the relevant statute; (2) The statutory amendment came after this Court had approved an oral notice to a political subdivision in Duesterhaus v. City of Edmond[28] which utilized a substantial compliance test for fulfillment of the statutory notice requirement; and (3) When the Legislature amends a statute whose meaning has been settled by case law, it usually has expressed an intent to alter the law.[29]
¶18 Unlike the phrase "shall be in writing" which was added by statutory amendment after Duesterhaus, the phrase "filed with the office of the clerk of the governing body" appeared in the statutory version construed in Duesterhaus.[30] Prior to the statutory amendment we discussed in Minie v. Hudson, "filed with the office of the clerk of the governing body" was a statutory requirement deemed to be fulfilled by a plaintiff's substantial compliance. In Conway v. Ohio Cas. Ins. Co.,[31] a case involving a school bus striking a six-year-old child, the child's lawyer sent a letter to the school district's insurer giving notice of the claim, and failed to send a similar letter to the clerk of the school district as then required by statute. In Conway, like the case before us today, defendant sought summary judgment with an attached affidavit from the clerk of the school district stating no notice had been received.[32] Further, we held notice to the school district's insurer was analogous to the oral notice in Duesterhaus and although "the notice given did not conform to the authorized procedures under the [Political Division Tort Claims] Act, it was sufficient to establish substantial compliance."[33]
¶19 The parties before us draw different conclusions from Minie, Duesterhaus, and Conway. School district's argument is that a plaintiff's notice of claim must be physically put into the hands of "the clerk" of the school board by the plaintiff and not given to a superintendent.[34] Plaintiff states Minie only applies to the notice being in writing, and he may give notice to anyone so long as the school district obtains knowledge of the claim. Generally, a party's fulfillment of a statutory mandatory (or jurisdictional) requirement is sometimes expressed as a "strict compliance" duty,[35] but fulfillment of a non-jurisdictional or directory statutory requirement is often expressed as a "substantial compliance" duty.[36] We recognize some obligations created by statutes do not neatly fit into a universally applicable dichotomy of mandatory (jurisdictional) versus directory (non-jurisdictional) nature, and a statute may be mandatory for some purposes and directory for others.[37] We disagree with the conclusions made by both parties.
¶20 When examining a provision of the GTCA the Court has looked at: (1) the "plain language" of a statute which requires no further construction,[38] (2) if the Legislature used a term indicating a mandatory requirement, such as the term "shall,"[39] (3) the purposes of the provision at issue,[40] (4) construing language consistently within an individual provision as well as part of the GTCA as a whole,[41] (5) the legislative history of the language at issue noting the Court's previous constructions,[42] and (6) legislative acquiescence to a judicial construction indicating a legislative intent agreeing with the construction.[43]
¶21 We begin by looking at the plain language of the statute at issue in this controversy and note the grammar used by the Legislature.[44] In Minie v. Hudson[45] we looked at this "A claim . . . shall be" and explained it clearly expressed a legislative intent and will commanding a GTCA claim to be in writing. In Minie the Court construed the language consistent with elementary English grammar and concluded a mandatory requirement for notice was the attribute that it "be in writing."
¶22 Plaintiff asks us to separate "shall be in writing" from "filed with the office of the clerk" so that while the former is mandatory pursuant to Minie v. Hudson, the latter is directory[46] and may be satisfied by a substantial compliance test.[47] Plaintiff's argument may be reduced to a simple assertion that a legislative mandatory intent must be expressed by using one type of a compound verb with a conjunction; i.e., the Legislature should have used "shall be written and filed" in the sentence if it wanted to create two mandatory requirements. Further, it is inferred, the absence of this grammatical expression results in two different standards for statutory compliance in the plain language.[48] We disagree. The term "filed" may not be separated from the phrase "shall be" without destroying both the grammar and plain meaning of the sentence.
¶23 We hold the plain language in 51 O.S. § 156(D) makes filing the GTCA notice with "the office of the clerk" of the governing body a mandatory duty. Of course and as we now explain, because the manner of filing with the clerk's office is not statutorily specified as mandatory, when a school district is the governing body one issue which arises is the identity of potential clerks who may receive the notice for filing, and whether a superintendent is a proper recipient for notice when the superintendent's managerial duties require both representing the board and transmitting to a clerk for filing any financial claims against the school district which the superintendent has received.
¶24 In Grisham we declined to make attributes of notice to be mandatory when the Legislature had not done so and the intent of the Legislature could be effected with a plain reading or construction of the GTCA statutes showing nonmandatory obligations. For example, we explained the GTCA notice requirements were designed to further legitimate state interests: (1) prompt investigation with fresh evidence, (2) opportunity to correct dangerous conditions, (3) quick and amicable resolution of claims, and (4) fiscal planning to meet possible liability. The GTCA notice in Grisham provided names, addresses, the date and time of damage, the name of the city's supervisor who investigated damage, insurance information, and sought monetary relief for their property damage; and the notice satisfied the public interests of the political subdivision.[49] Filing the notice with the office of the clerk of the governing body is mandatory pursuant to 51 O.S. § 156 (D), but the statutory language does not specify a mandatory procedure for such filing, and we decline to create a mandatory GTCA obligation in the absence of an expressed legislative intent to create such an obligation. Grisham, supra.
¶25 A school district is "a body corporate" and possesses the usual powers of a corporation for public purposes; it may sue and be sued, and is capable of contracting as well as holding real and personal property.[50] Generally, a corporation exercises its powers by and through a board of directors when engaged in external dealing with third persons.[51] A board of directors for a school district is the district's board of education: School districts are "under the supervision and the administration of the respective boards of education,"[52] and the board of education is known as "the governing board" for the school district.[53]
¶26 The members of the board of education are private citizens who choose to be selected by a public election.[54] Members of the board are assigned particular titles with associated duties, e.g., a president, vice president, and clerk.[55] A qualifying board of education may in certain circumstances use a board chair instead of a board president for the functions exercised by the latter.[56] The president and vice president are selected by the board, and the board "shall elect a clerk and, in its discretion, a deputy clerk, either of whom may be one of the members of the board."[57] A board of education "shall employ an encumbrance clerk and minute clerk, both functions of which may be performed by the same employee."[58] The encumbrance clerk keeps the books and documents of the school district and performs such other duties as the board of education or its committees may require.[59] The minute clerk is required to keep an accurate journal of the proceedings of the board of education and perform such other duties as the board of education or its committees may require.[60] A board member selected as a clerk may not serve as the encumbrance clerk and minute clerk.[61] If the board elects a board clerk who is not one of the members of the board, the board clerk may also be employed as the encumbrance clerk and minute clerk.[62]
¶27 An affidavit attached to defendants' motion to dismiss has an affiant who identifies himself as "the Clerk of the Board of Education" and states "[a]s Clerk of the Board of Education, one of my duties is to maintain the files that contain all tort claim notices filed with the Mounds School District." (Emphasis added). The affidavit does not specifically or expressly identify the type of clerk the affiant is asserting to be in support of the motion to dismiss. Defendants do not label, distinguish, or discuss a clerk who is a member of the board, or a clerk for the board who is not a member of the board, or an encumbrance clerk, or a minute clerk. Defendants do not indicate whether the board has more than one clerk, such as a deputy clerk or a clerk-employee. Though the affiant asserts status as "Clerk of the Board of Education" with duties keeping the books and documents of the school district, the question remains whether this individual is stating a status as an employee functioning as the encumbrance clerk and not a member of the School Board.[63] Affiant further states no tort claim notice "has been submitted to the Mounds School District" by any on behalf of the plaintiff. The parties do not address which type of clerk should receive the GTCA notice to satisfy filing with "the office of the clerk for the governing body." The parties do not discuss the office of the clerk as it relates to either a member of a board of education who serves as a "clerk," or the office of an "encumbrance clerk" who keeps the books and documents of a school district and is a school district employee.
¶28 The official actions of a school district's board of education usually occur by actions taken by the board in a public meeting as the board of education.[64] A board of education is not in a perpetual meeting, and some person or persons must act for the board of education when the board is not meeting. Except as otherwise provided by statute, a superintendent of schools is appointed and employed by the board of education to be the executive officer of the board and perform duties as the board directs.[65]
¶29 The following is stated in an Oklahoma administrative regulation.
. . . the first and most important responsibility of the board of education is a complete and comprehensive set of written polices giving the framework of authority assigned to its executive officer, the superintendent of schools. It is proper practice for the board of education to grant authority to its executive officer to represent it during the interim between board meetings on routine business management problems which can be handled within established policies.
(c) A person serving on a board of education should remember that he/she is only another citizen in the school district except when the governing board of the school district is in a regular or special meeting for the purpose of transacting business for the school district. Again he/she should remember that as a member of the board of education while it is in a meeting transacting the district's business he/she participates in determining the board's judgment but when the board as such adjourns he/she reverts to his/her status as a citizen of the school district and all acts of the board should be referred to by him/her as "the board of education in its meeting made this decision" without reference to persons or individuals who happen to be members of such board.
(d) If a board of education has not prescribed and written down its policies for its executive officer, then a point of departure would be to require the superintendent to furnish the leadership and secure the necessary consultative service to perfect such policies as would be sound in nature and functional for the management and operation of the district's business.
Oklahoma Administrative Code [O.A.C.] 210:10-1-7 (2011 & 2016) (emphasis added).
A superintendent is a public day-to-day representative for the board of education. A superintendent has a duty to implement the written policies of the board of education. In the absence of a needed written policy for a circumstance, a superintendent implements a policy sound in nature and functional for the management and operation of the district's business.[66]
¶30 Sound operation and functional management by a superintendent includes receiving a GTCA notice on behalf of the board in the course of the superintendent's daily business, and transmitting the notice to the proper clerk for the board. An employee or agent must act in good faith and in the interest of the employer/principal.[67] A superintendent is an employee of the school board[68] and also acting on behalf of the board when dealing with the public and managing business affairs of the school district. A superintendent acting in an official capacity may perform an act which binds the board upon its deemed or actual ratification by the board.[69] Generally, a public official exercises power in a manner where neither public nor private rights will be injured or impaired, and employees acting on behalf of a public official have a similar duty. We have explained a public official should not ignore, or injure, or impair a citizen's rights when the official is exercising power involving a statute intended for the protection of a citizen's rights,[70] and a similar duty arises for an official's employee acting on behalf of the official.
¶31 A superintendent receives as a part of O.A.C-recognized "routine business management," monetary claims against the district in various forms such as purchase orders, bills, and invoices; and these are then transmitted by the superintendent, pursuant to the superintendent's duties as a business manager, to the appropriate school district clerk or treasurer for proper action by the board or otherwise. A board of education is aware of monetary claims against the school district because the board has a legal obligation to pay its proper bills and a legal obligation to not pay improper bills.[71] No one disputes a school superintendent, as executive officer of the board, may have (1) a full or partial managerial and supervisory role, or (2) a mere business relationship role, relating to processing monetary claims by the encumbrance clerk for board.
¶32 The affidavit filed by the superintendent herein states: "I am also familiar with and access to all written notices of tort claims received by the School District." A superintendent is representing the board when transmitting documents temporarily in her or his custody to the proper clerk, and this duty is a ministerial duty where the superintendent is acting as a business manager and not as a clerk.[72] A superintendent receiving a GTCA notice on behalf of the board should, like other types of monetary claims against a school district the superintendent receives, transmit the notice to the proper clerk of the governing board for the appropriate action. Again, a business managerial aspect of representing the board and directing the filing of a monetary claim with the proper school district clerk is a routine managerial and ministerial duty for the benefit of the board while simultaneously not impairing the private rights of citizens who have been granted a GTCA remedy by the Legislature.
¶33 We recognize a superintendent is not a clerk for the board, and is prohibited from formally acting as the clerk.[73] However, many political subdivisions other than school districts maintain an office during normal business hours for public access to records of the entity; and the Legislature has provided for certain school district documents to be physically located in the superintendent's office for public inspection similar to the function provided by a clerk's office for other political subdivisions.[74] Our conclusion concerning a superintendent's business managerial duties as including a temporary custody of financial documents seeking payment of money and proper directions for processing by the school district, including a GTCA notice, does not run afoul of the Legislature's view a school district superintendent should be a permanent custodian of other statutorily specified records when for a public purpose and public inspection. We also note our conclusion is consistent with a general principle used by the Legislature for giving notice to a school district by service of process on an executive officer when not otherwise specifically stated by statute.[75]
¶34 We recognize plaintiff's January 2012 letter does not facially state "Notice of a Governmental Tort Claims Act claim," or request the superintendent to forward plaintiff's letter to the "clerk of the governing body." The plaintiff's letter identifies by name a six-year-old child who was struck by a Mounds school bus when exiting the bus on a specific date, and alleges the child suffered serious injuries, states the names of his parents, and discusses preservation of evidence and a cause of action against the school district.[76]
¶35 In the absence of evidence to the contrary, a court will generally presume that a public official will act in good faith to perform the official's duties and will faithfully discharge the duties the law imposes on the official.[77] Plaintiff's January 2012 letter gives sufficient information for the school district's public interests, i.e., to commence investigation of the event and an opportunity to correct any situation deemed necessary by the board. In the absence of evidence to the contrary we presume officials, including a school board, when receiving a notice of a child being "struck and dragged by a school bus" would want to know as much as possible concerning the event, determine the proper response by the board, if any, and assess the seriousness of the event for fiscal planning.
¶36 We hold: when a superintendent of a school board receives a written GTCA notice, the superintendent has received the GTCA notice for the board and should transmit the notice to the proper clerk of the board for filing and other appropriate action. We agree with the District Court's conclusion the January 2012 letter received by the superintendent was a notice of claim for the purpose of the GTCA, but for the reasons stated herein.
¶37 If a school superintendent does not immediately upon receipt transmit the written GTCA notice to the clerk of the governing body for filing and no filing occurs, then we will deem the date filed to be the date of delivery of the notice to the superintendent. The certified mail return receipt shows January 30, 2012, as the delivery date for the Mounds School District superintendent.
II (C). Insurance Adjuster's Letter for More Information,
Plaintiff's September 2012 Letter, and Claim Deemed Denied
¶38 Defendants cited 51 O.S.2011 § 157[78] and argued the claim was deemed denied 90 days after January 30, 2012 on Sunday April 29, 2012, and plaintiff then had 180 days from that date to file an action in the District Court. Plaintiff argued the combined effect of three letters showed an agreement for a period of negotiation tolling the time to commence a GTCA action in a district court. He first relied on two letters he sent, January and September 2012, and the January 2012 letter sent by the insurance adjuster. He later included his January 2013 letter in support of this argument. Plaintiff relied on 51 O.S. 2011 § 157 (B) which provided in part: "The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss."[79]
¶39 The trial judge stated he had doubts the September 2012 letter and packet were mailed in 2012. Plaintiff's assertion of mailing in September 2012 is supported by no evidence except for counsel for plaintiff's affidavit executed in August 2013 and stating he timely mailed the letter and packet in September 2012. The evidence from defendants was they did not receive the 2012 correspondence. Evidence in the record supports the trial court's assessment, and the assignment of error fails to point to evidence and legal argument sufficient to reverse this determination.[80]
¶40 The trial judge also concluded the September 2012 letter was legally insufficient to extend the GTCA time limits as a matter of law because no express agreement was made by the parties to extend the time limits. However, the fundamental nature or classification of legal obligations which could potentially arise from the adjuster's letter were not identified.[81]
¶41 Generally, legally enforceable agreements are often characterized based upon an express promise, a promise implied in law, or a promise implied in fact.[82] First, plaintiff points to no specific language in the letters showing an express stated intent or agreement to toll the GTCA time periods. The adjuster's letter states: "My communications with you and my investigation of this matter are not intended to waive any statutory exemptions from liability or time limitations imposed by the Oklahoma Tort Claims Act. Further, any settlement negotiations or discussions do not extend the date of denial of your client's claim." The letter provided no express agreement on tolling, but affirmatively stated no time limits were extended by the letter. No express promise was made to extend the time limits. This was discussed in the trial court. The parties make different assumptions concerning the nature of tolling by an adjuster's letter seeking additional information.
¶42 Intent or agreement of parties may be "legitimately inferred" when construing a contract implied in fact.[83] The existence of a contact implied in fact usually presents a mixed question of law and fact; with a determination whether facts exist, and a determination of law whether those facts determined to exist are legally sufficient to create an agreement or contract.[84] Defendants assume tolling the time limits by a request for more information from a plaintiff is an example of a promise or agreement implied in fact, and an express statement by an adjuster with language negating any tolling in a letter requesting information is sufficient to negate tolling because negation language shows no intent to toll the limits.
¶43 The intent of the parties is disregarded and an agreement of minds a "mere fiction" when an obligation is imposed as a matter of law. This promise implied in law requires legal authority to create and impress upon the parties the legal obligations to be enforced.[85] Plaintiff assumes a letter requesting more information creates a tolling of time limits which may not be negated by a party's statement of a contrary intent, i.e., tolling is a mandatory requirement and not cancelable by a statement of the public entity's intent.
¶44 In Bivins v. State ex rel. Oklahoma Memorial Hospital,[86] we held a government's request for additional information from a plaintiff creates a legitimate expectation to assume the 90 days for approval or denial of the claim would commence anew upon a timely response by plaintiff.[87] We explained this "legitimate expectation" arose from a "public-interest element which convinces us today that an agency's post-notice request for additional information must be regarded as impressed with serious legal effect."[88] We explained "[t]he request [for additional information] cannot be cavalierly dismissed as utterly without [legal] consequences upon the then-pending 90--day bar-of-suit interval."[89] We explained public policy favors an amendment of a claim pursuant to additional requested information necessary to make a meaningful assessment of the claim by the public entity.[90] We treated a request for more information as an extension of the 90-day period mandatorily required by public policy and similar to an agreement implied in law, so an agreement to toll was legally impressed upon the conduct of requesting more information.
¶45 However, we also recognized this public policy was consistent with providing a public entity a means to protect itself from a plaintiff who fails to timely respond to a request for more information. We explained the public entity could "(a) direct that supplemental information must be received on or before a stated date and (b) make it clear that if neither submission nor satisfactory explanation is timely made, the deficient claim's notice will stand denied at the end of the initially triggered 90--day period or at some other date that follows the deadline for submission of supplemental data."[91] This procedure for protection against dilatory conduct occurs when a public entity affirmatively states no tolling will occur as it relates to a request for more information. Such a statement in a letter is an example of both the absence of a mutual agreement to toll as well as the absence of an agreement implied in fact to toll when no other circumstance is present to show tolling.
¶46 In Bivins we distinguished some of our opinions and we expressly did not deprive them of their continued precedential effect. One of these was Sanchez v. City of Sand Springs,[92] where we held a city's request for additional information about a GTCA claim did not toll the 90--day period for denial of the claim. We explained that in Sanchez the city's insurance carrier requested information about the amount of the claim three days after the claimant's notice, and plaintiff did not provide the information until more than five months later.[93] Nothing in the record before us indicates why it took slightly more than seven months for plaintiff to respond to the insurance adjuster's request in January 2012.
¶47 Further, 51 O.S.2011 § 157 (A) states the date a claim is denied will not be extended "unless agreed to in writing by the claimant and the state or political subdivision." This language is broad enough to include both express agreements and expressions of intent, but the statute requires the agreement be in the form "in writing," and an agreement by the claimant and the government entity. A plaintiff may not unilaterally toll the GTCA time limits by delay in responding to a request for more information or by offering to settle after a claim has been deemed denied.[94]
¶48 We agree with the school district that plaintiff's claim was deemed denied 90 days after January 30, 2012, and plaintiff had 180 days from that date to bring an action in the District Court. 51 O.S.2011 § 157. The request for more information by the insurance adjuster did not toll the time for the school district to evaluate the claim or the time to commence an action in the District Court. The content of plaintiff's letter dated Sept. 5, 2012, even if it was mailed as alleged in counsel's affidavit, was untimely to respond to the request for more information, and was not effective to toll the GTCA time limits.
II (D). Plaintiff's January 30, 2013, Demand Letter and
Untimely District Court Action
¶49 Plaintiff sent a letter dated January 30, 2013, to defense counsel and stated it was a "first and only pre-suit formal demand in order to settle this matter without litigation." The injury occurred on January 10, 2012. Section 156 (B) of the GTCA states a claim against the state or political subdivision are to be presented within one (1) year of the date the loss occurs; and a claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.[95] This January 2013 letter may not, by itself, act as a timely first notice of a claim. Section 156 bars this letter acting as a notice of claim unless plaintiff pled and proved[96] tolling or an estoppel.[97] The correspondence plaintiff relies upon to show tolling is insufficient as a matter of law. Plaintiff's January 2012 notice was within one year of the date of loss, but the January 2013 letter may not function as the first notice of a claim for the purpose of plaintiff filing his District Court action in May 2013.
¶50 Plaintiff was required by 51 O.S. § 157 to bring his action within 180 days of the date his claim was deemed denied by the school district's 90 days of silence on his claim after receipt thereof on January 30, 2012.[98] We agree with the school district this period expired in October 2012. Again, plaintiff was required to plead and prove a tolling or an estoppel to escape from the effect of this statutory time limit. The correspondence plaintiff relies upon to show tolling is unilateral in nature and insufficient to show a mutual agreement for tolling as a matter of law. Plaintiff's action was filed May 2013 more than one year after the claim was deemed denied. The District Court action was untimely pursuant to 51 O.S.2011 §157.
III. Conclusion
¶51 We hold plaintiff's GTCA notice of claim sent to the correct school superintendent by certified mail satisfied the mandatory requirement in 51 O.S. § 156(D) for filing the GTCA notice with the office of the clerk of the school's board of education. We hold the insurance adjuster's request for additional information did not toll either (a) the 51 O.S. § 157(A) 90-day time limit for approval, denial, or deemed denial of the GTCA claim, or (b) the 51 O.S. § 157(B) 180-day period to commence suit, when the request stated it would not extend or waive time limits. Bivins, supra. We hold a plaintiff's letter unilaterally seeking settlement negotiations is not, as a matter of law, sufficient by itself to show an agreement pursuant to 51 O.S. § 157 to toll the GTCA time limits.
¶52 The opinion of the Court of Civil Appeals is vacated. The order of the District Court granting a motion to dismiss with prejudice is affirmed.

¶53 CONCUR: GURICH, C.J.; DARBY, V.C.J.; KAUGER, WINCHESTER, EDMONDSON, COLBERT, and COMBS, JJ.
¶54 PRESENT AND NOT PARTICIPATING: KANE, J.

FOOTNOTES

[1] Governmental Tort Claims Act, 51 O.S.2011 §§ 151-172.

[2] A written notice of a claim should reflect a demand for the sum of money sought. 51 O.S.Supp.2012 § 156 (E) ("The written notice of claim to the state or a political subdivision shall state the date, time, place and circumstances of the claim, the identity of the state agency or agencies involved, the amount of compensation or other relief demanded, . . . ."). A failure to specify the sum demanded does not by itself invalidate a written notice: "Failure to state either the date, time, place and circumstances and amount of compensation demanded, or any information requested to comply with the reporting claims to CMS under MMSEA shall not invalidate the notice unless the claimant declines or refuses to furnish such information after demand by the state or political subdivision." Id. § 156 (E).

[3] Harmon v. Cradduck. 2012 OK 80, n. 20, 286 P.3d 643, 650, citing Martin v. Johnson, 1998 OK 127, ¶ 28, 975 P.2d 889, 895.

[4] 1997 OK 26, 934 P.2d 1082.

[5] See discussion at ¶¶ 19-24, infra.

[6] See, e.g., Young v. Station 27, Inc., 2017 OK 68, ¶ 8, 404 P.3d 829, 834 (an order granting a motion to dismiss raising a jurisdictional issue is reviewed de novo and allegations of a petition are deemed as true); Sheffer v. Buffalo Run Casino, PTE, Inc., 2013 OK 77, 315 P3d 359 (determination of jurisdiction based upon the legal effect of a document recognized by all parties presented a question of law).

[7] 1987 OK 109, 747 P.2d 938.

[8] 1924 OK 393, 226 P. 45.

[9] Chandler, 747 P.2d at 942, quoting Abraham, 226 P. at 47.

[10] Reeds v. Walker, 2006 OK 43, ¶ 10, 157 P.3d 100, 107 ("when there are no contested jurisdictional facts, the question of subject matter jurisdiction is purely one of law which we review de novo"); Christian v. Christian, 2018 OK 91, ¶ 5, 434 P.3d 941, 942 ("when this Court is faced with a question of statutory interpretation, we apply a de novo standard of review").

[11] De novo, clear-abuse-of-discretion, and clearly-erroneous have been viewed as different standards. See, e.g., Ornelas v. United States, 517 U.S. 690, 694 n. 3, 116 S.Ct. 1657, 134 L.Ed2d 911 (1996) (1996) (distinguishing application of abuse of discretion and stating clear error is a term of art derived from Federal Rules of Civil Procedure, Rule 52(a)). However, when there is no rational basis in evidence to support a judgment, that judgment will be clearly erroneous and it will be an abuse of discretion when the law is applied to the facts which are of record. Nelson v. Enid Medical Associates, Inc., 2016 OK 69, ¶ 11, 376 P.3d 212, 217 (an abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling).

[12] K & H Well Service, Inc. v. Tcina, Inc., 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223 (in the context of an action for a money judgment and to foreclose liens in an action tried without a jury, we explained: (1) If any competent evidence supports the trial court's findings of fact those findings will be affirmed by the appellate court; (2) Issues of law are reviewed de novo; and (3) Any decision made by the trial judge based upon the judge's discretion will be reviewed on appeal using an abuse-of-discretion standard). Cf. State ex rel. Oklahoma Corp. Com'n v. McPherson, 2010 OK 31, n. 11, 232 P.3d 458, 466 (noting federal court's standard of review for a finding of fact in the context of a motion to intervene where: (1) The trial court's order is reviewed de novo when a pure issue of law is presented; (2) Findings of fact are reviewed for clear error; and (3) An abuse-of-discretion review is used if the trial court's judicial discretion is involved).

[13] Robinson v. Borg-Warner Protective Services Corp., 2001 OK 59, ¶ 16, 31 P.3d 1041, 1045 (decision on admission of evidence relevant to credibility is reviewed using an abuse-of-discretion standard).

[14] West v. Board of County Com'rs of Pawnee County, 2011 OK 104, n. 26, 273 P.3d 31 (in the context of a District Court granting a new trial after a jury trial on the issue of damages in an action at law, the Court noted a trial court's ruling will not be reversed because of an erroneous finding of fact if the judgment is legally correct). Cf. Utica Nat. Bank & Trust Co. v. Associated Producers Co., 1980 OK 172, 622 P.2d 1061, 1065-1066 (trial court's judgment affirmed although the trial court's reasons were incorrect).

[15] Bivins v. State ex rel. Oklahoma Memorial Hospital, 1996 OK 5, nn. 37 & 40, 917 P.2d 456, 464-465 (in the context of a GTCA claim the Court explained an appellate court will affirm a judgment on any applicable theory if the trial court record shows an actual trial court determination of those facts necessary to support the applicable theory on appeal).

[16] Central Plastics Co. v. Goodson, 1975 OK 71, ¶ 29, 537 P.2d 330, 335 (fact questions in dispute are insufficient to reverse a judgment on appeal where the judgment is supported by the trial court record; because the credibility of witnesses and effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by trier of facts).

[17] Nelson v. Enid Medical Associates, Inc., 2016 OK 69, ¶ 11, 376 P.3d 212, 217. Cf. Christian v. Gray, 2003 OK 10, ¶ 44, 65 P.3d 591, 609 (A District Court's finding in a legal action that a fact exists is reviewed on appeal with a clear abuse of discretion standard, i.e., whether there exists evidence in the record which supports the decision finding the fact exists; but that court's finding of insufficient facts, a finding of an absence of proof or absence of facts necessary for the proof legally required, is reviewed on appeal with a de novo standard.).

[18] High Desert Relief, Inc. v. United States, 917 F.3d 1170, n. 4, 1179 (10th Cir. 2019) (a clearly erroneous standard is used to review a finding of fact made without a jury and a finding of fact which is clearly erroneous is an abuse of discretion), citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) and Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). See also Holt v. U.S., 46 F.3d 1000, 1003 (10th Cir. 1995) (appellate review of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction uses a de novo standard, and when the jurisdictional ruling is based upon a finding of fact the appellate court accepts the trial court's finding unless it is clearly erroneous); Walters v. Wal-Mart Stores, Inc., 703 F.3d 1167, 1172 (10th Cir. 2013) ("An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings.").

[19] Although the abuse of discretion and clearly erroneous standards are not identical, one point of similarity in the present context is that Anderson, supra, explained the clearly erroneous appellate standard may not be used to weigh evidence differently than the trial court or to choose between two permissible views of the evidence; and we also have explained the existence of conflicting or two permissible views of the evidence may not be used as justification for an order granting a new trial when a verdict was based on one of those two views of evidence existing in the record. Compare, Anderson, 470 U.S. at 573-574 with Wright v. Central Oklahoma Milk Producers Ass'n, 1973 OK 15, 509 P.2d 464, 469-470. See also the comparison of K & H Well Service, Inc. v. Tcina, Inc., supra, with State ex rel. Oklahoma Corp. Com'n v. McPherson, supra, in note 12, supra.

[20] Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34, ¶ 17, n. 18 & 20, 394 P.3d 1224, 1232-1233 (matters not first presented to the trial court for resolution are generally not considered on appeal, and propositions relating to trial court error are deemed waived when unsupported by authority on appeal).

[21] Powers v. District Court of Tulsa County, 2009 OK 91, ¶ 9, 227 P.3d 1060, 1069 (a journal entry controls over an inconsistent minute entry; but the Court examines the record to determine what actually happened and if a true inconsistency exists between the minute and journal entry or whether they may be harmonized).

[22] Section 152 of the GTCA in effect on the date of injury stated a "claim" "means any written demand presented by a claimant or the claimant's authorized representative in accordance with this act to recover money from the state or political subdivision as compensation for an act or omission of a political subdivision or the state or an employee." 51 O.S.2011 § 152(4).

[23] 51 O.S.2011 § 157 states in part: "(A) A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the ... political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the ... political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period ... (B). No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section...."

[24] Title 51 O.S. 2011, §152 (11), stated a "'political subdivision' means . . . (b) a school district, including, but not limited to, a technology center school district established pursuant to Section 4410, 4411, 4420, or 4420.1 of Title 70 of the Oklahoma Statutes." Title 70 O.S. 2011 § 1-108 states: "A school district is defined as any area or territory comprising a legal entity, whose primary purpose is that of providing free school education, whose boundary lines are a matter of public record, and the area of which constitutes a complete tax unit." See Martin v. Johnson, 1998 OK 127, ¶ 28, 975 P.2d 889, 895 (a school district is a political subdivision for purposes of the GTCA).

[25] Hall v. The GEO Group, Inc., 2014 OK 22, ¶¶ 1, 13, 324 P.3d 399, 400, 404.

[26] 1997 OK 26, 934 P.2d 1082.

[27] 1997 OK 26, 934 P.2d at 1086.

[28] 1981 OK 107, 634 P.2d 720.

[29] Minie, 1997 OK 26, 934 P.2d at 1086.

[30] Duesterhaus, 1981 OK 107, 634 P.2d at n.1, 721, construing 51 O.S.Supp.1978 § 156 (B) of the former Political Subdivision Tort Claims Act, which stated: "A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs."

[31] 1983 OK 83, 669 P.2d 766.

[32] Conway,1983 OK 83, 669 P.2d at 767.

[33] Conway,1983 OK 83, 669 P.2d at 767.

[34] The original version of the then new Oklahoma Governmental Tort Claims Act, 51 O.S.Supp.1985 § 156(D) stated the claim "shall be in writing and filed with the office of the clerk of the governing body." (Emphasis added). This language has remained unchanged in the current version. 51 O.S.Supp.2018 § 156(D).

[35] See, e.g., Walker v. Oak Cliff Volunteer Fire Protection Dist., 1990 OK 31, 897 P.2d 762, 766 (Court requires strict compliance with a statutory obligation when the Legislature makes that obligation a mandatory duty because a court requiring anything less than strict compliance "results in overt judicial legislation").

[36] See, e.g., Henderson v. Maley, 1991 OK 8, 806 P.2d 626, 630 (statutory provisions for preservation of ballots after an election were directory rather than mandatory, and because they were the former the statutory duty was fulfilled by substantial compliance with the statute), explaining Looney v. County Election Board of Seminole County, 1930 OK 461, 293 P. 1056, 1059.

[37] See, e.g., Chandler v. Denton, 1987 OK 109, 747 P.2d 938, 944 (a statute with a mandatory time period for a party to fulfill was nevertheless directory and involving a quasi-jurisdictional fact; and the District Court's reliance upon the party's untimely fulfillment did not render the District Court's decree void for lack of jurisdiction).

[38] Hathaway v. State ex rel. Medical Research & Technical Authority, 2002 OK 53, n. 13, 49 P.3d 740, 743, citing Duncan v. City of Nichols Hills, 1996 OK 16, ¶ 15, 913 P.2d 1303, 1307.

[39] Grisham v. City of Oklahoma City, 2017 OK 69, ¶ 8, 404 P.3d 843, (the term "shall" in the phrase "shall be in writing" is normally considered a mandatory requirement for notice and previous substantial compliance by oral notice was no longer authorized).

[40] Grisham v. City of Oklahoma City, 2017 OK 69 at ¶ 11, 404 P.3d at 848-849 (notice provision of the GTCA has a purpose of furthering legitimate state interests) citing Watkins v. Central State Griffin Memorial Hospital, 2016 OK 71, ¶ 22, 377 P.3d 124, 130, citing Reirdon v. Wilburton Bd. of Education, 1980 OK 67 ¶ 4, 611 P.2d 239, 240.

[41] Grisham v. City of Oklahoma City, 2017 OK 69 at ¶ 12, 404 P.3d at 849 (language in a notice provision must be construed consistently with itself and other provisions of the GTCA) citing Broadway Clinic v. Liberty Mut. Ins. Co., 2006 OK 29, ¶ 6, 139 P.3d 873, 883 (part of an entire statute must be construed in light of the whole statute and its general purpose and objective) and Pellegrino v. State ex rel. Cameron University ex rel. Board of Regents of State, 2003 OK 2, 16, 63 P.3d 535, 540 ("an individual statute of the GTCA is viewed as one part of a whole statutory scheme with all individual statutes of the GTCA construed as consistent parts of the whole").

[42] McCathern v. City of Oklahoma City, 2004 OK 61, 95 P.3d 1090 (Court examined application of 2001 statute when party argued 1984 statutory amendment defined scope of governmental immunity); Childs v. State ex rel. Oklahoma State Univ., 1993 OK 18, 848 P.2d 571, 574 (issue presented by plaintiffs required an examination of a statutory amendment in light of legislative history and the Court's previous opinions construing earlier versions of the statute in the factual context of those cases); Minie v. Hudson, 1997 OK 26, 934 P.2d 1082, 1086 ("when the Legislature amends a statute whose meaning has been settled by case law, it has expressed its intent to alter the law"). Cf. Berry v. Public Employees Retirement System, 1989 OK 14, 768 P.2d 898, 899 (any doubt as to the meaning of a statute may be resolved by reference to its history).

[43] Cf. R. R. Tway v. Oklahoma Tax Com'n, 1995 OK 129, 910 P.2d 972, 976 (legislative silence after judicial construction of a tax statute is legislative acquiescence to that construction); Ethics Commission v. Keating, 1998 OK 36, ¶ 19, 958 P.2d 1250, 1256 (legislative silence in one statute combined with an expression of the legislative voice in another may give rise to an implication of legislative intent).

[44] In re Guardianship of Stanfield, 2012 OK 8, ¶ 11, 276 P.3d 989, 994 (when determining the meaning of an unambiguous statute, the ordinary rules of grammar must be applied unless they lead to an absurd result); Gilbert Central Corporation v. State, 1986 OK 6, 716 P.2d 654 (same); Smith v. Broken Arrow Public Schools, Independent School Dist. No. 3, 1983 OK CIV APP 19, 665 P.2d 858 (approved for publication by Supreme Court), (same).

[45] 1997 OK 26, 934 P.2d 1082.

[46] A distinction between mandatory and directory statutory language has been well-known in the common law since before its explanation in Rex v. Loxdale, 1 Burr. 445, 447 (1758), where Lord Mansfield stated: "there is a known distinction between the circumstances which are of the essence of a thing required to be done by an Act of Parliament, and clauses merely directory." See also School Dist. No. 61, etc. v. Consolidated Dist. No. 2, etc., 1925 OK 518, 237 P. 1110, 1111 (quoting Rex v. Loxdale, supra, for a difference between mandatory and directory language). Cf. Theodore Sedgwick, A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law, 318-319 (2d ed. 1874, Fred B. Rothman & Co. reprint 1980) (construction of mandatory versus directory statutory language was adopted from historically shared English jurisprudence).

[47] See, e.g., Looney v. Election Bd. of Seminole Cnty., 1930 OK 461, 293 P. 1056, 1061 (statutory provisions for preserving ballots were directory and not mandatory, and substantial compliance was sufficient).

[48] An example of plaintiff's sub silentio but present argument is found in Oden v. State, Regulation and Licensing Dept., 121 N.M. 670, 916 P.2d 1337. The sentence read: "The person assigned by the director shall make an immediate investigation, securing all pertinent facts and statements...." The court explained the term "shall" did not modify "securing all pertinent facts," because: "If the legislature had intended 'shall' to modify 'securing all pertinent facts,' it would have worded the statute 'shall make an immediate investigation and secure all pertinent facts.'" The court explained further: "Grammatically, 'shall' cannot form a compound verb with 'securing.'" Id. 916 P.2d at 1339. See also John E. Warriner & Francis Griffith, English Grammar and Composition: A Complete Course, 23 (Harcourt, Brace & World, 1963) ("a compound verb is a verb which consists of two or more connected verbs" and Warriner provides as an example: "The Council met at three and adjourned at four o'clock. [Compound verb: met . . . adjourned]").

[49] Grisham v. City of Oklahoma City, 2017 OK 69, ¶¶ 11-12, 404 P.3d at 848-849.

[50] 70 O.S.2011 § 5-105:
Every school district shall be a body corporate and shall possess the usual powers of a corporation for public purposes by the name and style of "Independent (or Elementary, if it is an elementary school district) School District Number __________ (such number as may be designated by the State Board of Education) of _______________ (the name of the county in which the district is located, or if lying in more than one county the name of the county where supervision is located) County, Oklahoma," and in that name may sue and be sued and be capable of contracting and being contracted with and holding such real and personal estate as it may come into possession of or by will or otherwise and as authorized by law.
See also 70 O.S.Supp.2018, § 5-117, as amended eff. Aug. 2, 2018, listing powers of a board of education.

[51] See for example, 18 O.S.Supp. 2013 § 1027 (A), stating in part: "The business and affairs of every corporation organized in accordance with the provisions of the Oklahoma General Corporation Act shall be managed by or under the direction of a board of directors, except as may be otherwise provided for in this act or in the corporation's certificate of incorporation." See also Henry Bldg. Co. v. Cowman, 1961 OK 75, 363 P.2d 208, 212 (stating rule and citing 18 O.S.1951 § 1.34, repealed Laws 1986, c. 292 § 160, eff. Nov. 1, 1986).

[52] 70 O.S.2011 § 5-101:
All school districts in Oklahoma, now in existence or which may hereafter be created, shall be designated only as independent, elementary or technology center school districts. Independent school districts, elementary school districts and technology center school districts shall be under the supervision and the administration of the respective boards of education thereof.

[53] 70 O.S.2011 § 5-106:
A. The governing board of each school district in Oklahoma is hereby designated and shall hereafter be known as the board of education of such district. Except as otherwise provided in this section, the superintendent of schools appointed and employed by the board shall be the executive officer of the board and shall perform duties as the board directs.
B. The board may contract with a superintendent for a term as mutually agreed upon but not to exceed three (3) years beyond the fiscal year in which the contract is approved by the board and accepted by the superintendent. The contract shall include all other terms and conditions as agreed upon in writing by the board and the superintendent.
C. The boards of two or more school districts may contract with one superintendent to serve as superintendent of the school districts as provided in Section 4 of this act.
D. No board of a school district having average daily membership (ADM) of fewer than five hundred (500) pupils shall be prohibited from allowing a superintendent to serve simultaneously as a principal.
E. The chief executive officer of the board of education of a district in which a public developmental research school is established shall be the director of the school appointed as provided in Section 1210.577 of this title.

[54] 70 O.S.2011 §§ 5-107A; 5-107B.

[55] 70 O.S.2011 § 5-120: "It shall be the duty of the president to preside at meetings of the board of education, to appoint all committees whose appointment is not otherwise provided for, and to sign all warrants ordered by the board of education to be drawn upon the treasurer for school money."
70 O.S.2011 § 5-121: "It shall be the duty of the vice president to perform all of the duties of the president in case of his absence or disability."
70 O.S.2011 § 5-122: "It shall be the duty of the clerk to countersign all warrants for school monies drawn upon the treasurer by the board of education and perform such other duties as required by law or as the board of education or its committees may require. The clerk of the board of education of any school district is hereby authorized to destroy all claims, warrants, contracts, purchase orders and any other financial records, or documents, including those relating to school activity funds, on file or stored in the offices of the board of education of such district for a period of longer than five (5) years."

[56] A board of education of a district with an average daily membership (ADM) of more than thirty thousand (30,000) students may be expanded to add a member who shall be elected at large for a term of four (4) years and who shall serve as chair of the board. 70 O.S.2011 § 5-107B. A chair of the board presides at meetings of the board and possesses all powers otherwise provided by law for a member of a board of education, all powers provided by law for the president of a board of education, and other lawful powers as may be conferred upon the chair by majority vote of the board. Id.

[57] 70 O.S.2011 § 5-119 (A): "Except for districts that elect a chair of the board pursuant to Section 1 [70 O.S.2011 § 5-107B] of this act, the board of education of each school district shall elect from its membership at the first regular, special or emergency meeting following the annual school election and certification of election of new members, a president and vice president, each of whom shall serve for a term of one (1) year and until a successor is elected and qualified. The board shall also elect a clerk and, in its discretion, a deputy clerk, either of whom may be one of the members of the board, and each of whom shall hold office during the pleasure of the board and each of whom shall receive such compensation for services as the board may allow. If the board elects a board clerk who is not one of the members of the board, the board clerk may also be employed as the encumbrance clerk and minute clerk. Provided, no superintendent, principal, treasurer or assistant treasurer, instructor, or teacher employed by such board shall be elected or serve as clerk or deputy clerk of the board nor as encumbrance clerk or minute clerk except that a treasurer or assistant treasurer may serve as a minute clerk. No board member shall serve as encumbrance clerk or minute clerk. The deputy clerk may perform any of the duties and exercise any of the powers of the clerk with the same force and effect as if the same were done or performed by the clerk. Before entering upon the discharge of the duties of the deputy clerk, the deputy clerk shall give a bond in a sum of not less than One Thousand Dollars ($1,000.00) with good and sufficient sureties to be approved by the board conditioned for the faithful performance of the duties of the deputy clerk."

[58] 70 O.S.2011 § 5-119 (B): "The board of education shall employ an encumbrance clerk and minute clerk, both functions of which may be performed by the same employee. The encumbrance clerk shall keep the books and documents of the school district and perform such other duties as the board of education or its committees may require. The minute clerk shall keep an accurate journal of the proceedings of the board of education and perform such other duties as the board of education or its committees may require. The board of education may designate a deputy minute clerk. The deputy minute clerk may perform any of the duties and exercise any of the powers of the minute clerk with the same force and effect as if the same were done or performed by the minute clerk. Before entering upon the discharge of the duties of the deputy minute clerk, the deputy minute clerk shall give a bond in a sum of not less than One Thousand Dollars ($1,000.00) with good and sufficient sureties to be approved by the board conditioned for the faithful performance of the duties of the deputy minute clerk. Before entering upon the discharge of their duties, the encumbrance clerk and minute clerk shall each give a bond in a sum of not less than One Thousand Dollars ($1,000.00) with good and sufficient sureties to be approved by the board conditioned for the faithful performance of their duties. If both functions are performed by the same person only one bond in a sum of not less than One Thousand Dollars ($1,000.00) shall be required."

[59] 70 O.S.2011 § 5-119 (B), supra, note 58.

[60] 70 O.S.2011 § 5-119 (B), supra, note 58.

[61] 70 O.S.2011 § 5-119 (A) includes the language: "No board member shall serve as encumbrance clerk or minute clerk."

[62] 70 O.S.2011 § 5-119 (A), supra, note 57.

[63] 70 O.S.2011 § 5-119 (A) & (B), supra, notes 57-58.

[64] See, e.g., Oldham v. Drummond Bd. of Ed. of Independent School Dist. No. I-85, 1975 OK 147, 542 P.2d 1309 (action by school board in violation of the then applicable 25 O.S.1971 § 201 of the former Open Meeting Act was invalid); Andrews v. Independent School Dist. No. 29 of Cleveland County, 1987 OK 40, 737 P.2d 929 (provisions of the 1981 version of the Open Meeting Act, 25 O.S. §§ 301-314, inclusive, applied to the school district's school board as the governing body; and Court concluded no violation of the Act had occurred).

[65] 70 O.S.2011 § 5-106(A), note 53, supra.

[66] Walker v. Grp. Health Serv., Inc., 2001 OK 2, ¶ 27, 37 P.3d 749 ("Administrative rules are valid expressions of lawmaking powers having the force and effect of law.").

[67] Martin v. Johnson, 1998 OK 127, ¶ 32, 975 P.2d 889, 896.

[68] 70 O.S.2011 § 5-106, supra, note 53. Cf. Board of Education of City of Bartlesville v. Schmidt, 925 OK 655, 239 P. 580 (superintendent of an independent school district is an employee of the board of education and the agent of the said board to manage the general operation of the school, organization, and work, under the authority and direction of the board); Farley v. Board of Education of City of Perry, 1917 OK 83, 62 P. 797 (city superintendent of schools was not an officer but an employee of the board of education).

[69] C & C Tile Co., Inc. v. Independent School Dist. No. 7 of Tulsa County, 1972 OK 137, 503 P.2d 554, 560 (when superintendent officially entered into a written contract the school district will be deemed to have ratified it and be bound thereby if it receives and retains the full benefits).

[70] Security Bank & Trust Co. of Miami v. Barnett, 1934 OK 429, 36 P.2d 874, 879 ("Requirements intended for the protection of the citizen and to prevent a sacrifice of his property, and by disregard of which his rights might be and generally will be injuriously affected, are not directory but mandatory."), Bonaparte v. American Vinegar Mfg. Co., 1932 OK 725, 17 P.2d 441, 452, and its reliance on French v. Edwards, 13 Wall. (U. S.) 506-517, 20 L. Ed. 702 (1871).

[71] We have not burdened our analysis with an unnecessary explanation of the various roles and duties a treasurer for a school district is statutorily charged with performing. But for one example of a treasurer's authority see 70 O.S.2011 § 5-114.

[72] Temporary custody of claims for payment of money by a school district employee or official does not turn the employee or official into a clerk for the school district, and such presentation of claims is a ministerial duty. American Asbestos Products Co. v. Independent School Dist. No. 14, 1945 OK 358, 164 P.2d 619, 620 (school board members, as individuals, submitting purchase orders to the board for approval and then certification of approved amounts within an unencumbered balance of an appropriation for the purpose of the expense are both ministerial acts although the acts are made mandatory by statute).

[73] 70 O.S.2011 § 5-119(A) includes the following: "no superintendent, principal, treasurer or assistant treasurer, instructor, or teacher employed by such board shall be elected or serve as clerk or deputy clerk of the board nor as encumbrance clerk or minute clerk except that a treasurer or assistant treasurer may serve as a minute clerk."

[74] 70 O.S.Supp.2018, § 5-117 (F), (as amended eff. Aug. 2, 2018) ("The board of education of each school district shall adopt and maintain on file in the office of the superintendent of schools appropriate personnel policy and sick leave guide. The guide shall be made available to the public.").

[75] See 12 O.S. 2011 § 2004 (C)(1)(c)(5) (and as amended in 2012, 2013, & 2017) (providing service on a governmental organization, including a school district, by delivering a copy of the summons and petition to the officer or individual designated by specific statute; "however, if there is no statute, then upon the chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the official records of the organization"); Okla. Stat. Ann. tit. 12, § 2004 (West 2010), Oklahoma Pleading Code Committee Comment (stating language for service on governmental organization follows the federal rule "in allowing service on the chief executive officer of the governmental unit, but adds a provision for service on the clerk, secretary, or other official whose duty it is to maintain the official records of the of the organization"). Cf. McClellan v. Bd. of Cty. Comm'rs of Tulsa Cty., 261 F.R.D. 595, 604 (N.D. Okla. 2009) (FRCP Rule 4 (j)(2)(B) provides service on a state, local government, municipal corporation, or state-created governmental entity, and the court noted this rule authorized service "in the manner prescribed by that state's law," and Oklahoma law provides that unless otherwise designated by statute, service may be made upon "a state, county, school district, public trust or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the petition to the ... chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the official records of the organization"); 12 O.S.2011 § 1193 (a statute originally enacted in 1925 and last amended prior to the enactment of both the 1984 Oklahoma Pleading Code and 1985 Governmental Tort Claims Act, states "where school boards or board of education are garnished, service herein shall be made by summons, as in other cases, upon the clerk of such boards").

[76] See 51 O.S.Supp.2012 § 156 (E), supra, note 2.

[77] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 18, 326 P.3d 496, 504.

[78] 51 O.S.2011 § 157, supra, note 23.

[79] 51 O.S.2011 § 157, supra, note 23.

[80] Central Plastics Co. v. Goodson, supra at note 16.

[81] We also note the September 2012 letter states as addressee the insurance adjuster and does not include the school superintendent, or office of the clerk of the board of education, or some other clerk for the board. We need not address whether the September letter has the necessary characteristics in proper circumstances to be a first notice of a claim and satisfy the mandatory obligation of filing with the office of the clerk. We have determined the January 2012 letter to the superintendent was the notice of a claim to be filed with the office of the clerk which commenced a 90-day approval/denial period unless tolled by agreement.

[82] Uptegraft v. Home Ins. Co., 1983 OK 41, 662 P.2d 681, 684 ("An action is one ex contractu when it is derived from (a) an express promise, (b) a promise implied in fact or (c) a promise implied in law.").

[83] Jones v. Univ. of Central Oklahoma, 1995 OK 138, n. 1, 910 P.2d 987, 989 explaining Conkling's Estate v. Champlin, 1943 OK 282, 141 P.2d 569, 570.

[84] See, e.g., Russell v. Bd. of County Com'rs, Carter County, 1997 OK 80, ¶ 24, 952 P.2d 492 (the factual and legal efficacy of an employer's act disclaiming an intent to make a personnel manual part of the employment contract presents a mixed question of law and fact); Hayes v. Eateries, Inc., 1995 OK 108, 905 P.2d 778, 783 ("Although normally the issue of whether an implied contract exists is factual, if the alleged promises are nothing more than vague assurances, as they are here, the issue can be decided as a matter of law.").

[85] Jones v. Univ. of Central Oklahoma, 1995 OK 138, n. 1, 910 P.2d 987, 989 explaining Conkling's Estate v. Champlin, 1943 OK 282, 141 P.2d 569, 570.

[86] 1996 OK 5, 917 P.2d 456.

[87] Bivins, 1996 OK 5, 917 P.2d at 461-463.

[88] Bivins, 1996 OK 5, 917 P.2d at 463, emphasis in original.

[89] Bivins, 1996 OK 5, 917 P.2d at 463, explanatory material added.

[90] Bivins, 1996 OK 5, 917 P.2d at 462-463.

[91] Bivins, 1996 OK 5, 917 P.2d at 464.

[92] 1990 OK 26, 789 P.2d 240.

[93] Bivins, 1996 OK 5, 917 P.2d at n. 31, 463.

[94] 51 O.S. 2011 § 157 (A). Cf. Sanchez v. City of Sand Springs, (5 month delay did not toll GTCA); Shanbour v. Hollingsworth, 1996 OK 67, 918 P.2d 73 (excusable neglect by plaintiff will not toll the GTCA time limits).

[95] On the date of injury, January 10, 2012, 51 O.S.2011 § 156 was in effect, and the amendment made by Laws 2012, c. 304, § 206, replaced "Department of Central Services" with the "Office of Management and Enterprise Services" in § 156 (C) involving claims against the State. The current version, 51 O.S.Supp.2012 § 156 (B) with language the same as on the date of plaintiff's injury states as follows.
"B. Except as provided in subsection H of this section, and not withstanding any other provision of law, claims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs."

[96] See, e.g., Sullivan v. Buckhorn Ranch Partnership, 2005 OK 41, ¶ 30, 119 P.3d 192, 201-202 (equitable estoppel is an affirmative plea which must be proved by the party asserting the estoppel); Colton v. Huntleigh USA Corp., 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073 (burden of proof as to any particular fact rests upon the party asserting such fact); Oxley v. General Atlantic Resources, Inc., 1997 OK 46, 936 P.2d 943, 946 (question of estoppel based upon other party's conduct is a mixed question of fact and law).

[97] See, e.g., Hall v. GEO Group, Inc., 2014 OK 22, ¶ 16, 324 P.3d 399, 405 (GTCA gave plaintiff "at most, one year to file his lawsuit. [90 days for the prison to deny a claim, 180 days to bring an action after a claim is denied, and 90 days tolled for incapacity due to injury]."); Watkins v. Central State Griffin Memorial Hospital, 2016 OK 71, ¶¶ 24-31, 377 P.3d 124, 131-132 (an estoppel may be created when plaintiff alleges government entity actively concealed or engaged in fraudulent or misleading conduct inducing plaintiff to refrain from bringing action).

[98] Grisham v. City of Oklahoma City, 2017 OK 69, n. 28, 404 P.3d 843, 850, citing Harmon v. Cradduck, 2012 OK 80, ¶ 28, 286 P.3d 643 and Brown v. Creek County ex rel. Creek County Bd. of County Com'rs, 2007 OK 56, ¶ 8, 164 P.3d 1073, 1076.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 
 1995 CO 94, 897 P.2d 762, Canape v. Petersen
Cited
The Supreme Court of the State of New Mexico
 Cite
Name
Level

 1996 NMSC 22, 916 P.2d 1337, 121 N.M. 670, Oden v. State, Regulation and Licensing Dept.
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1983 OK CIV APP 19, 665 P.2d 858, Smith v. Broken Arrow Public Schools, Independent School Dist. No. 3
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 40, 737 P.2d 929, 58 OBJ 1422, Andrews v. Independent School Dist. No. 29 of Cleveland County
Discussed
 1987 OK 109, 747 P.2d 938, 58 OBJ 3071, Chandler v. Denton
Discussed at Length
 1989 OK 14, 768 P.2d 898, 60 OBJ 260, Berry v. State ex rel. Oklahoma Public Employees Retirement System
Discussed
 1990 OK 26, 789 P.2d 240, 61 OBJ 839, Sanchez v. City of Sand Springs
Discussed
 1990 OK 31, 807 P.2d 762, 61 OBJ 841, Walker v. Oak Cliff Volunteer Fire Protection Dist.
Cited
 1991 OK 8, 806 P.2d 626, 62 OBJ 550, Henderson v. Maley
Discussed
 2001 OK 2, 37 P.3d 749, 72 OBJ 147, WALKER v. GROUP HEALTH SERVICES, INC.
Discussed
 1993 OK 18, 848 P.2d 571, 64 OBJ 745, Childs v. State ex rel. Oklahoma State University
Discussed
 1997 OK 26, 934 P.2d 1082, 68 OBJ 909, Minie v. Hudson
Discussed at Length
 1997 OK 46, 936 P.2d 943, 68 OBJ 1275, Oxley v. General Atlantic Resources, Inc.
Discussed
 1997 OK 80, 952 P.2d 492, 68 OBJ 2217, RUSSELL v. BOARD OF COUNTY COMMISSIONERS
Discussed
 2001 OK 59, 31 P.3d 1041, 72 OBJ 1962, ROBINSON v. BORG-WARNER PROTECTIVE SERVICES CORP.
Discussed
 1917 OK 83, 162 P. 797, 62 Okla. 181, FARLEY v. BOARD OF EDUC. OF PERRY
Cited
 1945 OK 358, 164 P.2d 619, 196 Okla. 274, AMERICAN ASBESTOS PRODS. CO. v. INDEPENDENT SCH. DIST. NO. 14
Discussed
 1961 OK 75, 363 P.2d 208, HENRY BUILDING COMPANY v. COWMAN
Discussed
 1932 OK 725, 17 P.2d 441, 161 Okla. 54, BONAPARTE Co. Treas. et al v. AMERICAN VINEGAR MFG. CO.
Discussed
 1934 OK 429, 36 P.2d 874, 169 Okla. 298, SECURITY BANK & TRUST CO. v. BARNETT
Discussed
 2002 OK 53, 49 P.3d 740, HATHAWAY v. STATE EX. REL. MEDICAL RESEARCH & TECHNICAL AUTHORITY
Discussed
 2002 OK 62, 51 P.3d 1219, K & H WELL SERVICE, INC. v. TCINA, INC.
Discussed
 1995 OK 108, 905 P.2d 778, 66 OBJ 3281, Hayes v. Eateries, Inc.
Discussed
 1972 OK 137, 503 P.2d 554, C & C TILE v. INDEPENDENT SCH. D. NO. 7 OF TULSA
Discussed
 1995 OK 129, 910 P.2d 972, 66 OBJ 3710, R.R. Tway, Inc. v. Oklahoma Tax Comm.
Discussed
 1973 OK 15, 509 P.2d 464, WRIGHT v. CENTRAL OKLAHOMA MILK PRODUCERS ASS'N
Discussed
 1995 OK 138, 910 P.2d 987, 66 OBJ 3897, Jones v. University of Central Oklahoma
Discussed at Length
 2003 OK 2, 63 P.3d 535, PELLEGRINO v. STATE EX REL. CAMERON UNIVERSITY
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed
 2004 OK 61, 95 P.3d 1090, MCCATHERN v. CITY OF OKLAHOMA CITY
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed at Length
 2005 OK 41, 119 P.3d 192, SULLIVAN v. BUCKHORN RANCH PARTNERSHIP
Discussed
 2005 OK 46, 121 P.3d 1070, COLTON v. HUNTLEIGH USA CORP.
Discussed
 1996 OK 16, 913 P.2d 1303, 67 OBJ 536, Duncan v. City of Nichols Hills
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed
 1930 OK 461, 293 P. 1056, 146 Okla. 207, LOONEY v. COUNTY ELECTION BD.
Discussed at Length
 1996 OK 67, 918 P.2d 73, 67 OBJ 1844, Shanbour v. Hollingsworth
Discussed
 2007 OK 56, 164 P.3d 1073, BROWN v. CREEK COUNTY
Discussed
 1924 OK 393, 226 P. 45, 102 Okla. 12, ABRAHAM v. HOMER
Discussed
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 31, 232 P.3d 458, STATE ex rel. OKLAHOMA CORPORATION COMMISSION v. McPHERSON
Discussed
 2011 OK 104, 273 P.3d 31, WEST v. BOARD OF COUNTY COMMISSIONERS OF PAWNEE COUNTY
Discussed
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed
 2012 OK 80, 286 P.3d 643, HARMON v. CRADDUCK
Discussed at Length
 1975 OK 71, 537 P.2d 330, CENTRAL PLASTICS COMPANY v. GOODSON
Discussed
 1975 OK 147, 542 P.2d 1309, OLDHAM v. DRUMMOND BD. OF EDUC.
Discussed
 2013 OK 77, 315 P.3d 359, SHEFFER v. BUFFALO RUN CASINO, PTE, INC.
Cited
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed at Length
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 1980 OK 67, 611 P.2d 239, Reirdon v. Wilburton Bd. of Ed.
Discussed
 2016 OK 69, 376 P.3d 212, NELSON v. ENID MEDICAL ASSOCIATES, INC.
Discussed at Length
 2016 OK 71, 377 P.3d 124, WATKINS v. CENTRAL STATE GRIFFIN MEMORIAL HOSPITAL
Discussed at Length
 2017 OK 34, 394 P.3d 1224, OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed
 2017 OK 68, 404 P.3d 829, YOUNG v. STATION 27, INC.
Discussed
 2017 OK 69, 404 P.3d 843, GRISHAM v. CITY OF OKLAHOMA CITY
Discussed at Length
 2018 OK 91, 434 P.3d 941, CHRISTIAN v. CHRISTIAN
Discussed
 1980 OK 172, 622 P.2d 1061, Utica Nat. Bank and Trust Co. v. Associated Producers Co.
Discussed
 1925 OK 518, 237 P. 1110, 110 Okla. 263, SCHOOL DIST. NO. 61 v. CONSOLIDATED DIST. NO. 2
Discussed
 1925 OK 655, 239 P. 580, 111 Okla. 277, BOARD OF ED. OF BARTLESVILLE v. SCHMIDT
Cited
 1981 OK 107, 634 P.2d 720, Duesterhaus v. City of Edmond
Discussed at Length
 1998 OK 36, 958 P.2d 1250, 69 OBJ 1672, ETHICS COMMISSION v. KEATING
Discussed
 1998 OK 127, 975 P.2d 889, 70 OBJ 34, Martin v. Johnson
Discussed at Length
 1943 OK 282, 141 P.2d 569, 193 Okla. 79, In re CONKLING'S ESTATE
Discussed at Length
 1983 OK 41, 662 P.2d 681, Uptegraft v. Home Ins. Co.
Discussed
 1983 OK 83, 669 P.2d 766, Conway v. Ohio Cas. Ins. Co.
Discussed at Length
 1986 OK 6, 716 P.2d 654, 57 OBJ 788, Gilbert Cent. Corp. v. State
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1193, Summons - Service when State, State Department or Institution, County or Municipality Garnished - Warrants
Cited
 12 O.S. 2004, 12 O.S. 2004, Process
Cited
Title 18. Corporations
 Cite
Name
Level

 18 O.S. 1.34, Repealed
Cited
 18 O.S. 1027, Board of Directors; Powers; Number; Qualifications; Terms and Quoram; Committees; Classes of Directors; Nonstock Corporations; Reliance Upon Books; Action Without Meeting; etc.
Cited
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 201, Repealed
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 156, Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Discussed at Length
 51 O.S. 152, Definitions
Discussed
 51 O.S. 157, Notice of Approval or Denial of Claim
Discussed at Length
Title 70. Schools
 Cite
Name
Level

 70 O.S. 5-107B, Expansion of a Board of Education - Chair of the Board - Submission to District Electors
Discussed
 70 O.S. 5-117, Powers and Duties - Rules and Regulations
Discussed
 70 O.S. 1-108, School District - Definition
Cited
 70 O.S. 5-101, School Districts - Designation
Cited
 70 O.S. 5-105, School District - Body Corporate - Powers
Cited
 70 O.S. 5-106, Governing Body of School District
Discussed at Length
 70 O.S. 5-107A, Boards of Education for Independent School Districts - Membership - Election - Procedure
Cited
 70 O.S. 5-114, County Treasurer as District Treasurer - Local and Assistant Local Treasurer - Estimate of Needs - Charge for Services
Cited
 70 O.S. 5-119, Election of Officers of Board of Education - Employment of Clerks
Discussed at Length
 70 O.S. 5-120, President - Duties
Cited
 70 O.S. 5-121, Vice President - Duties
Cited
 70 O.S. 5-122, Duty to Countersign Warrants for School Monies - Authority to Destroy Financial Records
Cited
Wyoming Supreme Court Cases
 Cite
Name
Level

 1900 WY 21, 62 P. 797, 9 Wyo. 290, State v. Willingham
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA